[No. 1218.   March 4, 1911.]

HENRY LOCKHART, Appellee, v. THE WASHING-TON GOLD AND SILVER MINING COMPANY, et al., Appellants.

SYLLABUS.

1. Evidence to show the existence and consummation of a fraudulent conspiracy, held to be competent.

2. Any fact occuring during any part of the ninety day period for perfecting the location which tended to establish any feature of the conspiracy was competent.

3. Other acts besides posting a notice are required to obtain exclusive right to possession of a mining claim. The claim must be marked on the ground so that its boundaries can be traced, and within ninety days a shaft must be sunk, and the notice recorded.

4. The object of defendants was to acquire the right to possession by location and it can not be said that the conspiracy was complete until all of the acts necessary to a complete right to exclusive possession had been performed.

5. Certain acts and declarations of alleged conspirators held to be harmless.

6. Communications to attorney by conspirators who gave advice in aid and furtherance of the conspiracy, are not privileged.

7. Principal was bound by agent's knowledge of fraud.

8. Held that portion of original locators and owners of mining claim who were represented in the location of the claim in dispute, by the other portion of such locators, were bound by the knowledge of the latter locators.

9. While failure to perform necessary acts of location results in forfeiture as against the subsequent qualified locator, it falls far short, under the facts in this case, of establishing abandonment.

10. Contract providing that any fraud on part of grub-stake prospector should result in forfeiture of his one-third interest to the plaintiff was enforcible.

11. Findings based upon substantial evidence will not be disturbed by this court.

12. Held that previous mining claim had no legal existence where locators merely posted notice and no other act of location is shown and where such notice is removed with knowledge of locators.

13. Departure of finding from allegations of complaint held to be such departure merely in form but not in substance.

14. Held that conspiracy did extend to the delivery of possession to the conspirators and that irrespective of other allegations in complaint, plaintiff is entitled to the relief sought.

Appeal from the District Court for Bernalillo County, before IRA A. ABBOTT, Justice. Affirmed.

W. B. CHILDERS and E. W. DOBSON for Appellant.

Statements made before title accrued in the declarant will not be receivable. Lockhart v. Leeds, 10 N. M. 568, 195 U. S. 427; Phillips v. Laughlin, 58 Atl. Rep. 65, Me.; Fall v. Fall, 60 Atl. Rep. 718; 2 Wharton on Evidence, secs. 1156-1170, 1190, 1206; 2 Wigmore on Evidence, secs. 1081, 1082; 1 Greenleaf on Evidence, sec. 180; Taylor v.

Mather, 9 Gray 185; Noyes v. Morrill, 108 Mass. 399; Stockwell v. Blarney, 129 Mass. 396; Hutchins v. Hutchins, 98 N. Y. 64; Dan v. Brown, 4 Cowen 483; 63 Pa. St. 63; Cuyler v. McCarthy, 40 N. Y. 228; Shailer v. Bumstead, 99 Mass. 128; Lincoln v. Claflin, 7 Wall. 138; Belk v. Meagher, 104 U. S. 283; Lockhart v. Johnson, 181 U. S. 526; Lockhart v. Wills, 9 N. M. 355 .

The existence of a constructive trust as of a resulting one must be proved by clear, unequivocal evidence. 3 Pomeroy's Eq. Jur., sec. 1049, note 4 d.; Lalone v. U. S., 164 U. S. 255; Babitt v. Dotten, 14 Fed. 19; Rice v. Ridgley, 7 Idaho 115; Conard v. Nicoll, 4 Peters 296; Thompson v. Sprague, 14 Pac. 182; North Noonday Min. Co. v. Orient Min. Co., 1 Fed. 522; U. S. v. Arredondo, 6 Peters 716; Clark v. White, 12 Peters 196; 3 Roses Notes to Sup. Ct. Rep. 722; 9 Enc. P. & P.686; Lockhart v. Leeds, 195 U. S. 434; Story on Equity Pleadings, sec. 257; Pelkam v. Eddinger, 15 Fed. Rep. 262; Dillon v. Bernard, 21 Wall. 430; U. S. v. Ames, 99 U. S. 35; Pullman Palace Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587; Ford v. Peering, 1 Ves. Jun. 72; Fogg v. Blair, 139 U. S. 127; Van Well v. Winston, 115 U. S. 237; Brooks v. Ohara, 8 Fed. 532; Phelps v. Elliott, 35 Fed. 453; LaFayette Co. v. Neely, 21 Fed. 744; Lockhart v. Leeds, 10 N. M. 598; 1 Daniels Chan. Pl. and Pr. 327; Montesquieu v. Sandys, 18 Ves. 302; Jackson v. Ashton, 11 Peters 229; Crockett v. Lee, 7 Wheat. 525; Jackson's Assignees v. Cutright, 5 Munf. 314; Wren v. Moncure, 95 Va. 375; Tripp v. Vincent, 3 Barbours Ch. 614; Austin v. Ramsey, 3 Tenn. Ch. 121; Slaright v. Payne, 2 Tenn. Ch. 176.

A mere cotenancy does not establish a partnership so as to establish a relation of trust and confidence. Bissell v. Foss, 114 U. S. 252; Tuck v. Downing, 76 Ill. 71; Cedar Can. Min. Co. v. Yarwood, 91 Am. St. Rep. 841; Bucher v. Mulverhill, 1 Mont. 305; Murley v. Ennis, 2 Colo. 300; Chadburn v. Davis, 9 Colo. 581; Pomeroy's Const., sec. 290; Hyer v. Richmond Traction Co., 168 U. S. 484.

A grub-stake contract does not constitute a partnership between the parties. Prince v. Lamb, 128 Cal. 120;

Cisna v. Mallory, 84 Fed. 851; Cooley on Partn., sec. 135; Craw v. Wilson, 22 Nev. 385; 2 Lindley on Mines, sec. 858; Johnstone v. Robinson, 16 Fed. 903.

Inference of abandonment. Creamery Pck. Mfg. Co. v. Sharples Co., 71 S. W. 1068; 2 Parsons on Contracts, 9 ed. 832; Davis v. Butler, 6 Cal. 510; St. John v. Kid, 26 Cal. 272; McKay v. McDougal, 87 Am. St. Rep. 395; Strang v. Ryan, 48 Cal. 33; Bissell v. Foss, 144 U. S. 252; Cedar Min. Co. v. Yarwood, 91 Am. St. Rep. 841; Saunders v. Mackay, 6 Pac. 361; Doherty v. Morris, 11 Colo. 12; Hunt v. Patchin, 36 Fed. 816; Davis v. Butler, 6 Cal. 510; Derry v. Ross, 5 Colo., 295; Ferris v. Coover, 10 Cal. 631; Mallett v. Uncle Sam Co., 1 Nev. 188; Dupuy v. Williams, 5 Mor. Min. Rep. 251; Rev. Stat., sec. 2324; 2 Lindley 1153, sec. 5; Belk v. Meagher, 104 U. S. 282; McGinnis v. Egbert, 8 Colo. 41; North Noonday Min. Co. v. Orient Min. Co., 6 Saw. 313; Jupiter M. Co. v. Bodie M. Co., 7 Saw. 114; Faxon v. Barnard, 2 McCrary 44; Zollars v. Evans, 2 McCrary 39; 6 Saw. 309; English v. Johnson, 17 Cal. 107; Table Mountain Co. v. Stranahan, 20 Cal. 209; 31 Cal. 390; Hess v. Winder, 30 Cal. 355; Rogers v. Cooney, 7 Nev. 219; Cambell v. Rankin, 99 U. S. 262; Trenouth v. San Francisco, 100 U. S. 251; Atherton v. Flower, 96 U. S. 513; Jupiter Min. Co. v. Bodie Co., 11 Fed. 66; Lockhart v. Johnson, 181 U. S. 527; 1 Lindley on Mines, secs. 217, 337, 345, 379; 2 Lindley on Mines, secs. 405, 651; Warnack v. DeWitt, 11 Utah, 324; Thompson v. Spray, 14 Pac. 181.

Contract in Equity not enforceable in equity. Cisna v. Mallory, 19 Mor. Min. Rep. 227; Prince v. Lamb, 128 Cal. 120; Rice v. Rigley, 7 Idaho 15; 4 Pom. Eq. Jur., 3 ed., sec. 1405; 6 Pomeroy's Eq. Jur., secs. 763, 764, 767, 774; Marbel Co. v. Ripley, 10 Wall. 359; Rusk v. Conard, 47 Mich. 449; 3 Pom. Eq. Jur., sec. 1293; 1 Pom. Eq. Jur., sec. 370.

Invalid because of prior location. 1 Jones on Ev., sec. 217; Burton v. Driggs, 20 Wall. 134; 1 Lindley on Mines, sec. 336; Book et al v. Justice Mining Co., 58 Fed. 106; U. S. Stat., sec. 2320; C. L. 1897, sec. 2298; Jupiter Mg. Co. v. Bodie C. Mg. Co., 11 Fed. 675; Eureka

Cons. Mg. Co. v. Richmond Mg. Co., 4 Sawy. 302; U. S. Mg. Co. v. Cheesman, 116 U. S. 536; Hyman v. Wheeler, 29 Fed. 347; Burke v. McDonald, 29 Pac. 98; Belk v. Meagher, 104 U. S. 284; Erhardt v. Boaro, 113 U. S. 527; Crossman v. Pendery, 8 Fed. 693.

When one party introduces and reads from such a record that which suits his purpose, the other party may read for his own benefit all that relates to that subject, or require the party introducing the record to do so. Tappan v. Beardsley, 10 Wall. 435.

Admissions in pleadings. 1 Jones on Evidence, sec. 276; Lockhart v. Wills, 9 N. M. 360; Belk v. Meagher, 104 U. S. 284.

Affirmative relief. 1 Jones on Ev., sec. 276; Belk v. Meagher, 104 U. S. 284; Wills v. Blain, 5 N. M. 238; 2 Lindley 1153.

The findings must be within the issues made by the pleadings. 8 Enc. P. & P. 944; Male v. Schaut, 69 Pac. 137; Comanche v. School Dist., 65 Pac. 301; Newby v. Myers, 24 Pac. 971; Johnson v. Hosford, 110 Ind. 572.

Privileged communications. Chirac v. Reineker, 11 Wheat. 294; McClellan v. Longfellow, 32 Mo. 494; Bacon v. Frisbie, 80 N. Y. 394; Aiken v. Longfellow, 27 Mo. 252; Tate v. Tate, 75 Va. 522; Betzhoover v. Blackstock, 3 Watts 20; Foster v. Hall, 12 Pick. 89.

Findings do not support the decree. Odgen v. Moore, 95 Mich. 290; Story on Eq. Pl., sec. 257; Pelkham v. Eddinger, 15 Fed. 262; 9 Enc. P. & P. 686; 1 Daniels Ch. Prac., sec. 327; Montesquieu v. Sandys, 18 Ves. 302; Crockett v. Lee, 7 Wheat. 525; Wren v. Moncure, 95 Va. 375; The Distilled Spirits, 11 Wall. 356; Lincoln v. Claflin, 7 Wall. 138; Cuyler v. McCartney, 40 N. Y. 228; Bissell v. Foss, 114 U. S. 252; Tuck v. Downing, 76 Ill. 71; Freeman on Cotenancy and Partition, sec. 172; Mahoney v. Van Winkle, 21 Cal. 582; Bank of Overton, v. Thompson, 118 Fed. 801; Bank v. Blake, C. C., 60 Fed. 78; Thompson Houston Electric Co. v. Capitol Electric Co., 132 C. C. A. 643; Bank v. Foote, 12 Utah, 157; Suit v. Woodhall, 113 Mass. 391; Startwell v. North, 144 Mass. 188; National Security Bank v. Cushman, 121

Mass. 490; Kennedy v. Green, 3 Myl. & K. 699; Espin v. Pemberton, 3 Deg. & J. 547; Rolland v. Hart, L. R. 6, Ch. 678; Re European Bank, L. R. 5, Ch. 358; Cave v. Cave, L. R. 15 Ch. Div. 639; Kittlewell v. Watson, L. R. 21 Ch. Div. 685; Inneraity v. Merchants Nat. Bank, 139 Mass. 332; Dillaway v. Butler, 135 Mass. 479; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268; Howe v. Newmarch, 12 Allen 49; Allen v. South Boston R. Co., 150 Mass. 206; Henry v. Allen, 151 N. Y. 1; Weisser v. Dennison, 10 N. Y. 68; Doe v. Ingersoll, 11 Smedes & M. 249; Russell v. Sweezy, 22 Mich. 235; Smith v. Dunston, 42 Iowa 48; Goodwin v. Dean, 50 Conn. 517; Pringle v. Dunn, 37 Wis. 449; Wittenbrock v. Parker, Cal., 24 L. R. A. 197; Lakin v. Sierra Buttes Gold Min. Co., 25 Fed. 337; Wilson v. Wall, 6 Wall. 83; Stanley v. Schwalby, 163 U. S. 276; 1 Lindley on Mines, sec. 233; Belk v. Meagher, 104 U. S. 283; Jones v. Van Doren, 130 U. S. 691; Halleck v. Collins, 10 How. 174; Plumb v. Fluitt, 2 Anst. 432; Ely v. Wilcox, 20 Wis. 523; Patten v. Moore, 32 N. H. 382; Ballington v. Welsh, 5 Bin. 129; Butler v. Stevens 26 Me. 484; Wright v. Wood, 23 Pa. St. 120; Boyce v. Williams, 48 Ill. 371; Meehan v. Williams, 48 Pa. St. 238; Holmes v. Stout, 3 Green, Ch. 492; McMechan v. Griffing, 3 Pick. 149; Hardwick v. Thompson, 9 Ala. 409; Townsend v. Little, 109 U. S. 504; Cambridge Val. Bank v. Delano, 48 N. Y. 326; Simmons Creek Coal Co. v. Doran, 142 U. S. 439; Lockhart v. Leeds, 195 U. S. 427.

H. B. FERGUSSON for Appellee.

If there is any evidence at all supporting the findings of fact by the court below in a case tried without a jury, such finding must stand. Badaracco v. Badaracco, 10 N. M. 761; Ortiz v. Bank, 12 N. M. 519.

Law of this case settled in U. S. Supreme Court. Lockhart v. Leeds, 195 U. S. 76.

This knowledge and means of knowledge is just as effective to bind one who came into the combination or conspiracy during its continuance and helped to accomp-

lish its purpose and shared in its proceeds as those who originally formed it. Lincoln v. Claflin, 7 Wall. 132; Commonwealth v. Rogers, 181 Mass; Lockhart v. Wills, 9 N. M. 263; 344; 181 U. S. 516.

A conjectural or imaginary existence of a vein or lode within their limits shall not be permitted. King v. Silversmith, etc., Min. Co., 152 U. S. 222; 1 Lindley on Mines, secs. 44, 336; Rev. Stat. U. S., sec. 44; Erhardt v. Boaro, 113 U. S. 527.

Priority of discovery gives priority of right against naked location and possession without discovery. 1 Lindley on Mines, secs. 335, 339, 351, 353, 355, 379, 404; Crossman v. Pendery, 8 Fed. 693; Rev. Stat. U. S., sec. 2324; Wills v. Blain, 5 N. M. 238; 2 Lindley on Mines, sec. 688.

Work done on claims after statutory 90 days shall be deemed effective if done before the rights of others intervene. 1 Lindley on Mines, secs. 330, 390; Erhardt v. Boaro, 113 U. S. 527.

Sufficiency of evidence and findings to prove conspiracy. Redding v. Wright, 51 N. W. 105; 8 Cyc. 676, note 57; Livermore v. Horshchill, 3 Pick. 33; Hardy v. Trick, 65 N. Y. 89; Brison v. Brison, 27 Pac. 186, Cal.; Roberts v. Ball, 38 Pac. 949.

Part of pleadings containing admissions, may be put in evidence; then opposite party may put in evidence other parts of same pleading, provided such parts qualify parts first put in evidence. 1 Wharton's Evidence, sec. 832; 10 Wall. 435; 17 Cyc. 319, notes 56-58; Rouse v. Whited, 82 Am. Dec. 337; Granite Gold Mining Co. v. Maginnis, 50 Pac. 269; 16 Cyc. 968; 1 Jones on Evidence, secs. 274-276.

Notice to, and knowledge of, one partner, is notice to, and knowledge of, the other partners. 17 A. & E. E., 1 ed., 1080.

Constructive knowledge of the principal, which is based on his agent's knowledge had while acting in the transaction for the principal, is a conclusive presumption of law, 2 Pomeroy's Eq. Jur., secs. 669, 672; 3 Wigmore on Evidence. sec. 1763; 2 Wigmore on Evidence, secs. 1078.

1079, 1793; 1 Jones on Evidence, secs. 255, 256; Lincoln v. Claflin, 7 Wall. 132; The Distilled Spirits, 11 Wall. 356; McIntyre v. Pryor, 173 U. S. 52; Com. v. Rogers, 181 Mass. 184; Bispham's Principles of Equity, sec. 268; 2 Pomeroy's Eq. Jur., secs. 597, 606, 610, 614, 615, 665, 666, note 1, 667, 676; Jones v. Smith, 1 Hare 43; LeNeve v. LeNeve, 2 White & T. Lead Cas. 127; Brush v. Ware, 15 Pet. 93; Simmons Creek Coal Co. v. Doran, 141 U. S. 239; Wade on Notice, sec. 689; 1 Pom. Eq. Jur., secs. 431, 451; New Albany v. Burke, 11 Wall. 107; Fogg v. Tennessee Nat. Bank, 9 Heisk. 479; Holden v. N. Y. & E. Bk., 72 N. Y. 286; Ames' v. N. Y., etc. Ins. Co., 14 N. Y. 253; Hart v. F. & M. Bk., 33 Vt. 252; Abel v. Howe, 43 Vt. 403; Dunbar v. Wilson, 32 Ill. 517; Hovey v. Blanchard, 13 N. H. 375; Porter v. Bank of Rutland, 19 Vt. 410; G. W. Ry. Co. v. Wheeler, 40 Mich. 419; May v. Boral, 12 Cal. 91; Hodgkins v. Montgomery Co. Ins. Co., 34 Barb. 213; Nudd v. Burrows, 91 N. S. 426; C. L. 1884, sec. 1571; 1 Lindley on Mines, secs. 330, 380, 390, 404; Erhardt v. Boaro, 113 U. S. 527; 2 Lindley on Mines, secs. 642-645; 1 Pom. Eq. Jur., sec. 401; Lockhart v. Johnson, 181 U. S. 655; Lockhart v. Johnson, 54 Pac. 336; Wills v. Blain, 5 N. M. 238; Lockhart v. Leeds, 195 U. S. 76; Atlantic Cotton Mills v. Indian Orchard Mills, 17 N. E. 496, Mass.

Sufficient evidence of conspiracy. Commonwealth v. Rogers, 181 Mass. 184.

### OPINION OF THE COURT.

PARKER, J.—This is a suit in equity brought by plaintiffs against defendants to charge them as constructive trustees *ex maleficio* and as such to hold the title to the Washington mining claim for the use and benefit of plaintiff. A decree in favor of plaintiff was rendered by the court below and defendants appeal. This same case was before this court in Lockhart v. Leeds, 10 N. M. 568, and the complaint was held insufficient to authorize any relief to the plaintiff. Upon appeal to the Supreme Court of the United States it was held by that court that the complaint was sufficient to authorize relief to plain-

tiff and that is now the law of the case. Lockhart v. Leeds, 195 U. S. 427. The cause was remanded to the district court of Bernalillo County where answer and replication were filed and trial had, resulting in the decree above mentioned. The complaint is voluminous, and it would seem to be necessary to a proper understanding of the case to set out portions of the same in full. A copy of the same, together with a copy of the findings and decree are set out in the margin.

Defendants had filed twenty-six assignments of error which may be disposed of in the manner in which they are treated in the briefs. It is urged that there is no legal evidence before the court of the alleged fraudulent conspiracy. That there is evidence before the court is not denied, but its competency is challenged on two grounds. The proof consists of the acts and declarations of the alleged conspirators. It is objected, first, that the same are inadmissible for the reason that they are in disparagement of defendants record title, made by their predecessors in title. But the argument is clearly faulty and the principle invoked can have no possible application to the facts in this case. This evidence was intended to show the existence and consummation of a fraudulent conspiracy to deprive plaintiff of his rights in the mining ground in question. The consequences flow from the conspiracy, and the fact, if true, that the declarations amounted to a disparagement of title is simply incidental and can, from no point of view, render the proof inadmissible. It is objected, second, that the declarations shown were inadmissible for the reason that they were made before the alleged combination was formed or after the same was consummated. Concerning the principle relied on, there can certainly be no question. But when did this alleged conspiracy commence and when did it end? It is to be remembered that the conspiracy relied on by plaintiff is a conspiracy to defraud him of his rights in the mining ground in question and consisted in inducing the prospector to refrain from doing those acts of location required by law to perfect the location of the Sampson claim. Appellants

argue that the alleged conspiracy consisted in an agreement to relocate the ground after October 10, 1893, the date of the expiration of the ninety day period within which the Sampson location might be perfected. But this is clearly too narrow a view of the facts. It is alleged in the complaint, and the court found, that a material element of the conspiracy consisted in the agreement of the prospecor, Pilkey, to refrain from doing the necessary acts of location of the Sampson claim, and which, otherwise, he would have performed, and in the delivery by him of the possession of the ground to the conspirators. It thus appears that any fact occurring during any part of the ninety day period for perfecting the Sampson location which tended to establish any feature of the conspiracy, was competent. This disposes of all of the objections to the declarations and acts of the conspirators prior to the actual location of the Washington claim on October 23, 1893. Certain declarations and acts subsequent to October 23, 1893, were shown in the evidence. The court below found the conspiracy to be complete upon the above date. In a sense this is true. But other acts beside posting a notice are required. The claim must be marked on the ground so that its boundaries can be traced before exclusive right to possession can be obtained, and within ninety days a shaft must be sunk and the notice recorded. The object of defendants was to acquire the right to possession by location, and we do not see how it can be said that the conspiracy was complete until all of the acts necessary to a complete right to exclusive possession had been performed. If this is correct, the objections to the evidence of acts and declarations subsequent to October 23, and prior to December 30, 1893, the date of record of the location of the Washington claim, are of no avail.

Certain other acts and declarations of the alleged conspirators are shown subsequent to December 30, 1893, but they do not relate specifically to the subject matter of the conspiracy and are harmless.

It is urged, third, that the testimony of an attorney of one of the alleged conspirators was inadmissible be-

cause the communications to him were privileged. It is overlooked, however, by counsel for appellants that the communications to the attorney were by one of the conspirators and that his advice was obtained in aid, and in furtherance, of the conspiracy. Under such circumstances no communication of client to attorney is privileged. 4 Wigmore on Ev., sec.·2298.

What has been said as to the admissibility of the evidence of acts and declarations of the alleged conspirators refers to the situation of only a portion of the original locators and owners of the Washington. claim. As to them the court found specifically that they had knowledge of the rights of plaintiff and entered into the conspiracy relied upon to defraud him. Another portion of the original locators and owners are in a different position. As to them, the court found that the evidence failed to establish that they had actual knowledge of plaintiff's rights prior to October 23, 1893, the date of the location notice of the Washington claim, but that they had constructive notice of the same and were consequently bound thereby. The constructive notice to which they are held by the court arises out of the facts found that during the pendency of the conspiracy, and prior to October 10, 1893, the date of the ending of the ninety day period within which the Sampson location must have been perfected, they allied themselves with the other conspirators, furnished them money and supplies, and appointed them their agents to locate the ground in question for the mutual benefit of all. The court held them, consequently, chargeable with notice of the conspiracy, its scope and object, and all that the co-conspirators knew concerning the same. This proposition is vigorously combatted by counsel for defendants.

It is argued by counsel for plaintiff, in support of the decree, that there was constructive notice by reason of (1) the established agency to locate the ground and (2) the knowledge of facts sufficient to ·put upon inquiry. The agency comprehended the location of the ground in question and necessarily involved an examination of the same for mineral, evidences of prior location by others, if any, and investigation as to all the facts involved in a valid

location. At the time the agents were possessed of full knowledge of the rights of plaintiff. The situation, in principle, it seems to us, was the same as if the agents had been employed to purchase the ground from the plaintiff for the joint benefit of both principals and agents, and, in effecting the purchase, the agents had practiced a fraud on plaintiff of which he was entitled to complain. This would seem to bring the case squarely within the rule laid down in case of The Distilled Spirits, 11 Wall. 356, the leading case on the subject, in which it was held that the principal was bound by the agents' knowledge of the fraudulent abstraction of the spirits without the payment of the tax. Counsel for appellant argue that the case at bar falls within one of the exceptions to the rule that notice to the agent is notice to the principal, viz: that where the agent is attempting or practicing some fraud on his principal, or is occupying some adverse position to him, the presumption that he informed his principal will not be indulged. 2 Pom. Eq. Jur., sec. 675; 31 Cyc. 1595; Electric Co. v. Electric Co.. 65 Fed. 341; Am. Surety Co. v. Pauley, 170 U. S. 133; Bank v. Thompson, 118 Fed. 798. It must be apparent that no such conclusion can be drawn from the facts. The agents were practicing no fraud on the principals and were taking no adverse position to them. The fraud was practiced on the plaintiff and the agents sought to give the principals the benefit of the same. We therefore, hold that the portion of the original locators and owners who were represented in the location of the Washington claim by the other portion of such locators, were bound by the knowledge of the latter locators.

It is urged by appellants that plaintiff had abandoned the Sampson location and hence cannot maintain this suit. The abandonment, it is claimed, is established by the evidence that plaintiff knew that the required acts of location had not been performed before the expiration of the ninety day period, and still failed to perform the same. While such failure resulted in a forfeiture as against the subsequent qualified locator, it falls far short, under the facts in this case, of establishing abandon-

ment. A sufficient answer to the argument of appellants on this point is found in the sixth finding of the court and which finds support in the evidence. Plaintiff produced evidence that Pilkey was claiming that he was progressing with the work on the claim in a satisfactory manner and that plaintiff was misled as to the facts by Pilkey, and that possession would have been resumed, even after forfeiture, but for the adverse possession by the locators of the Washington claim. This proof the court evidently believed and so found.

Appellants argue against the decree on the ground that the grub-stake contract under which the Sampson was located was incapable of specific enforcement. The contract provided that any fraud on the part of Pilkey should result in the forfeiture of his one-third interest to plaintiff. The court found that his interest in the Sampson and Washington claims was so forfeited. It is argued that this amounts to a specific performance of the contract, and we assume that it does. Such contracts are enforcible. Cisna v. Mallory, 84 Fed. 851. It is argued that this contract is not enforcible because of lack of mutuality and insufficiency of consideration. We confess we are unable to follow the argument made. The contract was certain in terms and the subject matter thereof was identified by the location. The consideration was certain and evidently satisfactory to Pilkey when he made the contract. We see no reason why this contract cannot be enforced in equity. The objection that its enforcement amounts to the enforcement of a forfeiture is not urged by counsel.

Appellants complain of the failure to make thirty-one findings of fact requested by them. It is sufficient to say that the court could not make the findings because they would be inconsistent with the findings which the court did make upon the facts adduced at the trial. The same may be said in regard to appellant's objection to the findings which were made by the court. They were based upon substantial evidence and will, of course, not be disturbed in this court.

It is urged that plaintiff never had any rights under

the Sampson location by reason of the fact that the ground was previously located by strangers to the record under the name of the San Salvador. An examination of the evidence discloses the fact that the alleged San Salvador locators merely posted a notice of location on the ground. The notice or its contents does not appear. No other act of location is shown. No discovery of mineral, no work on the ground. The alleged locators are not here complaining. It further appears that when the Sampson notice was posted the San Salvador notice was removed with the knowledge of at least one of the locators of the latter. No objection was heard from either locator. Under such circumstances it would seem that the San Salvador may well be treated as having no legal existence.

It is argued that the case alleged and the case proved and found by the court are two entirely different cases, and that, consequently, the decree was erroneous. This raises an important question. It is alleged, in substance, that Pilkey after posting notice and marking on the ground the boundaries of the Sampson claim, commenced to sink a shaft as required by the local laws, and, upon information and belief, did sink the same within the ninety day limit. There is proof by at least one witness that this was true. But the court found, in effect, it was untrue under the third finding of fact. It found that Pilkey was induced to refrain from doing the preliminary requirements necessary within the ninety day period. It is claimed that this finding is a departure from the allegations of the complaint. It is, in form; but is it in substance? We think not. How can it be material to defendants whether Pilkey ever commenced the work on the shaft by reason of the fraudulent conspiracy, or whether, after commencing, he refrained from completing the same by reason of the same conspiracy. The same notice to defendants of plaintiff's claims would be present, and the same evidence, would be relevant in either case.

It is further alleged that it was agreed that Pilkey should transfer, convey and deliver possession of the ground to the conspirators. The court found that the

conspiracy did extend to the delivery of possession to the conspirators. The court thus found one of the essential averments to be true. We have thus a case pleaded, proved and found by the court as follows: A prospector under 14 contract posts a location notice and initiates a location; he is charged with the duty of performing the several acts of location; he enters into a fraudulent conspiracy to refrain from perfecting the location and to cause a forfeiture thereby; he does refrain from doing said acts and, upon forfeiture, delivers possession to the conspirators. This certainly makes out a case, and, irrespective of the other allegations in the complaint,. entitles the plaintiff to the relief sought. It cannot be contended that there is any departure in proofs or findings from the allegations.

This disposes of all of the contentions of appellants. The court is indebted to counsel on each side for the aid furnished by their respective briefs which are unusually able and exhaustive. For the reasons stated the decree of the lower court will be affirmed, and it is so ordered.

C. J. Roberts, A. J., not having heard the argument, did not participate in this opinion.

MARGIN.
(Complaint).

Henry Lockhart, a resident of the County of Bernalillo and Territory of New Mexico, by leave of the court files this amended (second) bill of complaint against, and complains of H. C. Leeds, J. A. Johnson, Julia A. Johnson, his wife, J. Q. Wills, Charles Pilkey, Samuel Dunlap, successor in interest of Frank Fagaly, deceased, the heirs and legal representatives of Lee Walker, deceased, William B. Childers, Edward W. Dobson, and Charles Bonsall, receiver, impleaded with the said defendants by leave of court first had and obtained, all residents of the said County of Bernalillo, defendants in this cause, and humbly complaining, shows unto your honor that heretofore, to-wit, on the seventh (7) day of May, 1893, a certain agreement in writing bearing said date was made and entered into by and between your orator and one Benjamin Johnson, by the name and description of Benj. Johnson, with

the defendant Charles S. Pilkey, a copy whereof is herewith filed and marked Exhibit "A," and made a part of your orator's Bill of Complaint; wherein and whereby the said Pilkey contracted and agreed with your orator and the said Benjamin Johnson to enter into a co-partnership with them for the purpose of discovering, locating and operating mining claims; and it was thereby contracted and agreed by and between said parties that the said Pilkey should prospect and locate such veins, lodes or placers as he might discover or know the existence of, containing valuable ores or minerals, in the name of and for the joint benefit of all the said parties to said agreement in the proportion of one-third interest to said defendant Pilkey, and an undivided two-thirds interest to your orator and the said Benjamin Johnson. And your orator and the said Benjamin Johnson, thereby contracted, in consideration of the premises, to furnish the said Pilkey at their expense, the following articles and tools; viz.: twenty-five pounds of Giant Powder, One Hundred feet of Fuse, One box of Caps, one Hammer, ——pounds of Drill Steel and One Pick; and when he should have sunk or driven a shaft or tunnel four feet by six feet from the lowest level of the surface at its mouth, upon such vein and locality as should be designated by them, he should receive in addition to the above property, the sum of Thirty Dollars ($30) less any money for provisions or other articles, except those above named, which should be furnished to him by them prior to the completion of said work; and it was thereby further contracted and agreed, that said work was to begin within twenty days from the date of said agreement, and should be prosecuted with due diligence to completion, and to the satisfaction of your orator and the said Johnson, and that the said Pilkey should furnish them from time to time, at their request, samples of all ores and minerals which should be discovered or be taken out of any workings by the said Pilkey; and it was thereby further contracted and agreed that it should be at the option of your orator and the said Benjamin Johnson to continue working or abandon any claim located in pursuance at any time they might deem proper, and that

the said agreement should continue in force and effect for one year from its date, and that all discoveries or locations made during that time by the said Pilkey should be included and covered by said agreement; and it was thereby further contracted and agreed that the said Pilkey should have no power to create any debt or make any contracts binding the said other parties unless by them in writing authorized so to do. And that any concealment by or on the part of the said defendant Pilkey of any discovery by him made or failure upon his part to locate any valuable mineral claim or claims for the purpose of evading the terms of said agreement, and defrauding your orator and the said Benjamin Johnson, should work a forfeiture of any right or interest direct or indirect, that the said Pilkey might have or afterwards obtain to and for the benefit of your orator and the said Benjamin Johnson.

And your orator further states that the agreement aforesaid was duly subscribed, executed and delivered by and between the said parties thereto and your orator, and the said Benjamin Johnson then and there delivered the said articles and provisions, and paid the said money, and divers other sums of money to and for the said Pilkey, and in all respects kept and performed the terms of the said agreement upon their part, and were at all times thereafter ready and willing and offered so to do.

Your orator further states that, at and prior to the date of said agreement, the said parties thereto had knowledge and information of the existence of valuable mineral deposits in the north-easterly portion of the said County of Bernalillo, in the vicinity of the town called Cochiti, and it was their purpose in pursuance of said agreement, that the said Pilkey should prospect, search for, discover, locate and acquire title to and hold possession of the same, for their joint use and benefit, in the proportion and upon the terms therein set forth.

And your orator further states, that, under and in pursuance of the terms of said agreement, the defendant Pilkey did thereafter proceed to the aforesaid portion of said County, and did on or prior to the tenth (10) day

of July, 1893, find and discover a certain valuable mineral bearing lead, lode, ledge, vein or deposit, bearing gold and silver, and it then and there enter upon and take actual, full · and peaceable possession of fifteen hundred (1500) linear feet of, on and along the said mineral bearing lead, vein or deposit, and also of three hundred (300) feet of surface ground along and on each side of said fifteen hundred (1500) feet, which was necessary and convenient for the mining and working of said mineral deposit, which are, respectively, more particularly identified and described in the notice hereinafter mentioned, and posted thereon by said Pilkey, and which is referred to and made a part of this bill for a more particular description, for and on behalf of your orator and said other parties to the said agreement as claimants, discoverers and locators of the same, under and in pursuance of the terms of said agreement.

And as evidence of said discovery, claim and possession, the said Pilkey then and there posted, in a conspicuous place upon said lead, lode, ledge, vein or deposit, bearing mineral, a notice of location and possession thereof, bearing the said date, a copy whereof is herewith filed marked Exhibit "B," and made a part of this, your orator's bill of complaint; and marked the boundaries of said claim upon the ground in such manner that the same could be readily traced, and thereafter transmitted to your orator and the said Benjamin Johnson, at their request, samples of ore and minerals by him taken and extracted from the said mineral bearing lode, lead, or ledge so by him discovered and taken possession of as before stated, and did thereafter, in pursuance of the direction of your orator and the said Benjamin Johnson, commence to sink a shaft or cut upon said mineral bearing lode or ledge to the depth of ten feet from the lowest rim thereof; and your orator is informed, and believes, and so states, that he did so sink such shaft or cut thereupon to mineral in place, disclosing a large and valuable deposit of gold and silver bearing ore in place, within less than ninety days from the time of taking possession of said lode or ledge as aforesaid; and your orator states that they the said discoverers, loca-

tors and claimants of said mineral bearing lode, or ledge, not then knowing whether said mineral claim was situated upon public domain of the United States, and was free and open to location under the mining laws of the United States, performed the required acts of location under said laws and the laws of this Territory, and were ready, able and willing in all things to comply therewith, and would have so done except for the wrongful, fraudulent and unlawful acts of the defendants hereinafter mentioned.

Further complaining your orator shows unto your honor, that, on or about October first, 1893, the defendant Pilkey, while so in possession of said lead, lode or ledge, under and in pursuance of said agreement, wrongfully and fraudulently conspired, combined and confederated with the said defendants, H. C. Leeds, J. A. Johnson, Frank Fagaly, and Lee Walker, to defraud your orator and the said Benjamin Johnson of their interest in and title to the said mine and minerals discovered and possessed by them as aforesaid, and of which the said Pilkey as the partner of and co-owner with your orator, was then in possession under the agreement aforesaid, and in pursuance of said conspiracy and confederation, on, to-wit, October first, 1893, the precise date whereof being unknown to your orator, an agreement was made and entered into by the defendants Fagaly, J. A. Johnson, Walker and Leeds, the defendant Julia Johnson, being a party to and having some interest under the said agreement, and the defendant Pilkey being a party thereto, by which it was agreed that the said Pilkey in violation and fraud of the rights of your orator in and to the said mine of which he was then in possession as aforesaid, by him discovered and held under said agreement, should transfer, convey and deliver possession of said mine to the last named defendants, without the knowledge or consent of your orator and the said Johnson, and that they should do and perform all other acts deemed necessary for that purpose; and complainant states that the said defendant Pilkey by an instrument in writing the precise terms of which are unknown to complainant, the same being in the possession of the said defendants or some of them, sold, transferred

and conveyed to the defendants, Fagaly, J. A. Johnson, Leeds and Walker, an undivided four-fifths interest in said mine and mineral, the said Pilkey retaining an undivided one-fifth interest therein, which was conveyed to said Walker by said instrument and by him held in secret trust for said Pilkey; and in pursuance of said fraudulent combination and conspiracy, the defendants, Frank Fagaly, J. A. Johnson, Lee Walker and H. C. Leeds, together with the defendant J. Q. Wills, caused and procured the defendant Pilkey to stop work upon said mine under said agreement, and to fail and neglect to record said location notice so by him posted thereon as aforesaid, and the said defendants or some one of them wrongfully removed said location notice from said claim, and said defendants covered up or concealed the said workings thereon heretofore done and performed by the defendant Pilkey, as aforesaid, and by collusion with the said Pilkey, and without the knowledge or consent of your orator and the said Johnson, entered into and upon the said lead, lode, ledge and deposit bearing gold and silver, and upon the said parcel of surface ground including the same, mentioned and described in the said location notice, and known as the "Sampson Mine," and denied and still denies that your orator had or has any interest therein, and thereafter, having so procured the possession of the same, the said defendants in pursuance of said confederacy, caused to be posted upon said mine a location notice, and filed the same for record, in the office of the Recorder of said County, on, to-wit, December 13th, 1893, and caused the same to be recorded in Book "E," page 576, of Mining Records, a copy whereof is herewith filed and marked Exhibit "C," and made a part of this bill; and thereby the said defendants claim to have located the said lode or ledge bearing gold, silver and other minerals, so first discovered, located and held by the said Pilkey for the benefit of himself, your orator and the said Benjamin Johnson, and described by him in the said location notice by him thereon posted as aforesaid, as the "Sampson Mine;" for the benefit of themselves as locators under the mining laws of the United States, and called and designa-

ted the same as the "Washington" lode; and it was agreed in pursuance of said confederacy and for the purpose of concealing from your orator the interest of said Pilkey in the said pretended location, that each of the four last named defendants should be entitled to a one-fifth interest in said mine, and the said Pilkey should be entitled to the remaining one-fifth interest, but that the said last named interest should be claimed and held by said Walker in trust for said Pilkey.

Your orator further states that the said Benjamin Johnson has conveyed to him all his said interest in and to the said Sampson location and mine, and your orator has become and now is the owner of the title and interest of the said Benjamin Johnson.

x  x  x  x  x  x  x  x  x  x  x  x  x  x  x  x

Your orator avers that by virtue of said prior discovery, possession, working and location of said mine by the said Pilkey, acting under the agreement before mentioned, your orator became and now is equitably entitled to the said gold, silver and mineral therein contained, and in equity and in good conscience has a prior and paramount right and title in and to the same as against the said defendants or any or either of them. Your orator further states that the respective defendants, Wills, Childers, Dobson and Dunlap claim some right or interest in and to the said pretended mining location called and known as the Washington Mine derived under or through some of the other said defendants, but your orator states that the said Wills and the said Leeds, J. A. Johnson, Julia Johnson, Fagaly and Walker, and each of the defendants herein at and prior to the time of acquiring any interest in said mine, had full knowledge and notice of the rights of your orator and Benjamin Johnson in and to the said mineral deposit, and of their agreement with the said Pilkey hereinbefore mentioned.

Your orator further states that after the removal by the said defendants of the said location notice posted as aforesaid by said Pilkey of the said Sampson mine, a copy whereof was procured by your orator of which Exhibit "C" filed herein is a copy, and the same was recorded in

the office of the Recorder of said County of Bernalillo, on December 9th, 1893, in Volume "F," of Mining Records of said county at Folio seven (7). Your orator states that by virtue of the premises, he became and was and now is the equitable owner of the said mineral bearing vein, lead, lode and deposit hereinbefore described, and of the gold and silver ores therein contained, so discovered, possessed and located by the said Pilkey under the said agreement, and is equitably entitled as against the said defendants to the possession and enjoyment of the same and to the preferential right to acquire the legal title to the same from the United States; and that the said pretended location thereof under the name of the Washington Mine by and in the names of the defendants, Leeds, J. A. Johnson, Fagaly and Walker was and is wholly inoperative and void, and that the said defendant Charles Pilkey by reason of his participation in the said fraudulent conspiracy, combination and acts with the said defendants, under and in pursuance of your orator's said agreement with him, has forfeited all right or interest direct or indirect in and to the said Sampson mine; and your orator is equitably the owner of and entitled to the same; and your orator had well hoped that the defendant would recognize his prior right and title in and to the same, and surrender the possession to the same and release all claim thereto to your orator, but now so it is that the said defendants, excepting said defendant Bonsall as Receiver, combining and confederating together as aforesaid, give out and claim in speeches that the said pretended location and location notice of the said alleged "Washington" lode by the said defendants was and is a valid location against your orator, and that your orator has no title or interest in and to the said mine, bearing gold, silver and other minerals so discovered, possessed and located as the Sampson mine, by the defendant Pilkey as hereinbefore set forth; and refused to permit your orator to enter upon the said property, or to work the same, or to exercise any acts of possession or ownership thereon; and defendants respectively claim title to said mining property under and by virtue of said transfer and conveyance from said Pilkey

and said pretended location of said Washington lode here-inbefore mentioned.

x  x  x  x  x  x  x  x  x  x  x  x  x  x  x  x

Your orator therefore prays that the said H. C. Leeds, J. A. Johnson, Julia A. Johnson, his .wife, and J. Q. Wills, Charles Pilkey, Samuel Dunlap, the heirs and legal representatives of the said Lee Walker, deceased, William B. Childers, Edward W. Dobson and Charles Bonsall, Re-ceiver as aforesaid, be required to full, true and perfect answer make to all and singular the allegations of this your orator's second amended bill of complaint, but without oath, their respective answer under oath being hereby waived, and that a Receiver be appointed to take posses-sion of the said lead, lode, ledge or deposit, bearing gold, silver and other metals, situated within the mining claim or location, in the Cochiti Mining District, Bernalillo County, New Mexico, called and known as the "Sampson" mine, and mentioned and described in the location notice thereof, made by Charles Pilkey, Benjamin Johnson and Henry Lockhart, dated July 10, 1893, and recorded in Vol. 5, of Mining Records of said County, at folio 7, on December 9th, 1893, to keep and hold possession there-of until the further order of this court, and that the said transfer and conveyance executed by said Pilkey to said Fagaly, Leeds, J. A. Johnson, and Walker, be decreed fraudulent and void as against your orator, and that the same be cancelled and annulled; and that the location and location notice of the said "Washington" lode, by and in the name of Frank Fagaly, Lee Walker, H. C. Leeds, J. A. Johnson be decreed to be void and of no effect as against your orator, and that the said defendants be enjoined from mining, working or removing from the said Washington lode, any ore or mineral, and that your orator be decreed to be the equitable owner of the said ore and mineral contained therein and entitled to the prior and preferential right to acquire the legal title thereto from the United States, by virtue of said prior discovery and appropriation thereof by said Pilkey, and for such other and further relief as may be equitable and proper in the premises.

And your orator prays as by his original bill of complaint he has already prayed.

## FINDINGS OF THE COURT BELOW.

And Thereafter, on, to-wit, the 23rd day of March, 1907, there was filed in the office of the Clerk of said Court, in said cause, the Finding by the Court; are in the words and figures following, to-wit:

## HENRY LOCKHART, v. THE WASHINGTON GOLD AND SILVER MINING CO., et al.   No. 3888.

### I.

On the 7th day of May, 1893, the defendant, Charles Pilkey, entered into a contract in writing with Henry Lockhart, the plaintiff, and one Benjamin Johnson, whereby said Lockhart and Johnson were to furnish certain provisions, supplies, money and tools to said Pilkey during the term of said contract, which was one year from the date thereof.   By the terms of said contract, and for the consideration therein named, the said Pilkey was to prospect for, discover and duly locate, under and in accordance with the mining laws of the United States and of the Territory of New Mexico, in the joint names, and for the joint benefit, of said Lockhart and Johnson the said Pilkey, any veins, lodes, ledges or deposits of mineral bearing rock containing precious metals that might be found by said Pilkey in a certain designated portion of Bernalillo County, New Mexico, during the term of said contract.   Pilkey was to furnish to said Lockhart and Johnson samples of ore taken from any vein of mineral discovered and appropriated under said contract, in order that its value might be determined; and any fraud by Pilkey was to forfeit his share, which was to be one-third in any mine discovered and located.

### II.

In pursuance of said contract, Pilkey did, on the 10th day of July, 1893, in said designated section of Bernalillo County, discover, on the open unappropriated public mineral lands of the United States, a certain vein,

lode, ledge or deposit of mineral bearing rock in place, bearing gold and silver, and did then and there enter into the possession of and appropriate the same, together with the lawful surface ground, for the benefit of, and in the name of said Lockhart and Benjamin Johnson and himself, the said Pilkey, and did post thereon, in accordance with law, the said vein and surface ground being then open, unappropriated mineral land of the United States, a location notice of the same as a mining claim, duly signed by the said Lockhart, Johnson, and Pilkey as locators, and named and known as the Sampson mine. And said Pilkey commenced to do the preliminary work on said Sampson claim required by law to be done on mining claims within ninety days from the location of the same, but did not finish such work.

### III.

And thereafter, and prior to the completion of the preliminary work and requirements necessary to perfect said Sampson location, and prior to the expiration of the time limited by law within which a discovered and appropriated vein of mineral, together with the surface ground, is required to be perfected as to its location by disclosing mineral in place in the vein or deposit at least ten feet below the surface of the ground, by staking and monumenting said claim or location, and by recording a copy of the posted notice of location in the proper office, the said Pilkey conspired and confederated with the said defendants, Levi Walker, and Frank Fagaly, to defraud said Lockhart, the plaintiff, and Benjamin Johnson of their interest in and title to said Sampson mining claim, and fraudulently and secretly, without the knowledge or consent of said Lockhart and Benjamin Johnson, to acquire and vest in themselves the title of and interest in said Sampson mining claim. The said Pilkey, by the terms of said frudulent conspiracy, was to secretly, and without the knowledge or consent of said Lockhart and Johnson, fail and neglect to complete the preliminary requirements necessary by law to be completed within ninety days from the date of the location of said claim, and to permit said claim to be forfeited and to become public

domain, and was to deliver possession of said claim and vein and surface ground in due time to his said co-conspirators, so that the legal title to the same might be secretly acquired by the parties to said conspiracy.

### IV.

Subsequently to the formation of said fraudulent confederation and conspiracy on the part of said Pilkey, Walker and Fagaly, but prior to the 10th day of October, 1893, or the expiration of ninety days from the location of said mining claim, and during the progress of said confederation and conspiracy, the said defendants, H. C. Leeds, James Q. Wills and J. Johnson, by J. A. Johnson, her husband, and agent in this transaction, entered into an agreement with said Pilkey, Walker and Fagaly, by which they undertook to furnish money and other assistance, and did so furnish such money and other assistance, to them, the said Pilkey, Fagaly and Walker, for the purpose of locating and perfecting mining claims in the district in which said Sampson claim was located, for the benefit and as the property of the above named parties to said agreement; and particularly what was represented to them by the said Pilkey, Walker and Fagaly as a rich mineral deposit, which was in fact the Sampson claim, although it was not affirmatively established by the evidence that its name was then made known to them, or that they had actual knowledge of the rights of the said Lockhart and Benjamin Johnson in the premises before the completion of the conspiracy, October 23, 1893, by posting of the location notice of the Washington mine on the Sampson claim. And thereby they authorize the said Pilkey, Walker and Fagaly to use their names in location notices and in their behalf to do all the acts necessary to locate and perfect mining claims in said district, including said Sampson claim.

### V.

In pursuance of said fraudulent conspiracy, the said Pilkey concealed from said Lockhart and Benjamin Johnson what he knew as to the value of said Sampson mining claim, and especially what he and his co-conspirators, actual and constructive, knew in relation to the result of

an assay of certain samples of ores, which in September, 1893, he and said Fagaly took from said Sampson claim, without the knowledge or consent of said Lockhart and Benjamin Johnson, and which assay indicated great value in said Sampson vein or lode; and concealed all things touching said conspiracy, its existence, purpose and prog-ress and with the knowledge of his said co-conspirators, actual or constructive, failed and neglected to do and per-form fully the acts and requirements prescribed by law, above mentioned, in order to perfect said Sampson loca-tion, and failed and neglected to have recorded, as required by law, a copy of said posted location notice of said Samp-son mining claim.

## VI.

The said plaintiff and Benjamin Johnson, fully per-formed the said contract, dated May 7th, 1893, on their part, except so far as they were prevented by the said Pilkey from so doing, and were ready and willing to per-fect said Sampson mining location within the time limited by law, and to prevent its forfeiture by completing the necessary legal requirements, and would have done so prior to the expiration of the time limited by law but for the wrongful, fraudulent and unlawful acts and concealments of said conspirators; and would have resumed possession, after the expiration of said time, for the purpose of com-pleting said requirements, and thus preventing the for-feiture of said mining claim, but for the adverse possession of the same by said conspirators.

## VII.

On or about the 10th day of October, 1893, and prior to the 23rd day of October, 1893, said Pilkey, in pursuance of said fraudulent conspiracy, delivered said Sampson mining claim, and said vein and surface ground compris-ing the same, without the knowledge or consent of said plaintiff and Benjamin Johnson, to his said co-conspirators, or to some one or more of them for the benefit of all of them, and placed them in complete possession of the same; and thereafter, on the 23rd day of October, 1893, said Frank Fagaly, being so in possession of said Samp-son mining claim for himself and for and on behalf of

his co-conspirators, H. C. Leeds, J. A. Johnson, Julia Johnson, Levi Walker, Charles Pilkey and James Q. Wills, did post a location notice on said vein and surface ground previously located as the Sampson, and in said location notice named the same the Washington mining claim, and signed to said location the names of four of said conspirators, viz: H. C. Leeds, J. Johnson, Levy Walker and Frank Fagaly; but the actual, beneficial ownership in said Washington mining claim, as agreed and understood between said conspirators prior to and at the time of said location, was as follows:

Said Levy Walker was to hold the legal title to two-fifths, one-fifth for himself and one-fifth in secret trust for said Charles Pilkey; said H. C. Leeds, said J. Johnson, and said Fagaly were each to hold the legal title to one-fifth, but each to so hold only three-twentieths for himself, and each to hold one-twentieth in secret trust for said James Q. Wills.

### VIII.

Said Benjamin Johnson duly conveyed his interest in said vein and surface ground and Sampson mining claim to plaintiff, Henry Lockhart, prior to the institution of this suit.

### IX.

One T. S. Austin has acquired, since the institution of this suit, an interest with and under said plaintiff in said Sampson mining claim.

### X.

All of said original defendants, Levy Walker, Frank Fagaly, H. C. Leeds, J. A. Johnson, Julia Johnson, Charles Pilkey, and James Q. Wills, held their respective interests in said Washington mining claim and location at the time of the institution of this suit, and by various conveyances and mesne conveyances and the operation of law and title of each and every of said last named defendants has become, pendente lite and with knowledge, vested in the defendants, the Washington Gold and Silver Mining Company, a corporation, and M. P. Stamm.

From the facts found, the Court deduces these conclusions of law.

First: The interest of the defendant Pilkey in the property called and known as the Sampson Mine, and later the Washington mine was forfeited to and become the property of the plaintiff, Henry Lockhart and Benjamin Johnson, under the terms of his agreement with them.

Second: The defendants, Leeds, Wills and Julia Johnson, through associating themselves with the defendants, Pilkey, Fagaly and Walker, and aiding them in the conspiracy to obtain said property, as it is found they did, became co-conspirators with them and had constructive knowledge of all that was done by them in furtherance of the conspiracy, and all they knew in relation to the subject-matter thereof, and in equity no one of the six obtained any interest in said property as against the plaintiff, Henry Lockhart and Benjamin Johnson.

Third: The plaintiff, Henry Lockhart, became, and is, the equitable owner of said property; and the present defendants are, in equity, the holders of the title and possession thereof for him as trustees ex-maleficio by succession to the legal title thereof, fraudulently obtained by the original conspirators.

IRA A. ABBOTT,
Judge Second District.

And thereafter, on to-wit, the 28th day of January, 1907, there was entered of record in the office of the Clerk of said Court, in said cause, the Final Decree; which said Decree is in the words and figures following, to-wit:

In the District Court of the Second Judicial District of the Territory of New Mexico, sitting within and for the County of Bernalillo.

HENRY LOCKHART v. THE WASHINGTON GOLD AND SILVER MINING CO. ET AL.—No. 3888.

This cause coming on to be heard on the original bill filed by the plaintiff against the original defendants, Levy Walker, Frank Fagaly, Charles Pilkey, H. C. Leeds, J. A. Johnson, and Julia Johnson, his wife, James Q. Wills, Charles Bonsall, receiver, William B. Childers and Edward W. Dobson; and on the first and second amended

bills of complaint against said defendants and their successors in interest; and on the answer of the Washington Gold and Silver Mining Company, a corporation, and M. P. Stamm, and the replication of the plaintiff to the answer of said defendants, and the proofs, oral, documentary and written, taken and filed in said cause; and having been argued by counsel for the respective parties, and the court being fully advised in the premises:

It is therefore by the Court ordered, adjudged and decreed, that the plaintiff, Henry Lockhart, was and now is the equitable owner of said vein and surface ground and mining claim and the gold and silver ores therein contained, and is equitably entitled as against the said defendants to the possession and enjoyment of the same; that said Pilkey, under said agreement with plaintiff and said Benjamin Johnson, forfeited all right or interest in said vein and surface ground and mine, by reason of his participation in said fraudulent conspiracy, and that plintiff is the owner of, and equitably entitled to, such interest; and that said defendants acquired and hold the possession of, and the legal title to, the same under the name and designation of the Washington Mine, in fraud of the rights of the plaintiff therein and thereto, and that they are equitably the holders of such possession and legal title as trustees, ex maleficio, for the use and benefit of said plaintiff.

And it is by the court further ordered, adjudged and decreed that the said defendants, the Washington Gold and Silver Mining Company, by its proper officers, and in due form, and the said M. P. Stamm, in due form, execute a good and sufficient deed of conveyance of the said Washington Mine and mining claim to the said plaintiff, Henry Lockhart, and return the same into this Court within sixty days from the signing of this decree, to be approved by the Court and delivered to said plaintiff; and that said last named defendants, upon the delivery of said deed to said plaintiff, deliver also to the said plaintiff possession of said Washington Mine and mining claim; and in case of the failure of said defendants to execute said deed of conveyance as herein ordered, then and in

that event, John Venable, Esq., Clerk of said Court, is hereby appointed commissioner of this court for the purpose of executing such deed of conveyance vesting the legal title of and to said Washington Mine, by virtue of this decree, in said plaintiff, Henry Lockhart; the said John Venable, Esq., Commissioner as aforesaid, is directed and empowered to execute such deed of conveyance and return the same into Court to be approved as to form and sufficiency.

It is further ordered, adjudged and decreed, that plaintiff have and recover of and from said defendants, the Washington Gold and Silver Mining Company and M. P. Stamm, his costs in this behalf expended, to be taxed by the Clerk of this Court, and that he have execution therefor; and it is further ordered that a writ of possession issue in favor of said plaintiff against said defendants, the Washington Gold and Silver Mining Company and M. P. Stamm.

IRA A. ABBOTT,<br>Judge of the Second District.