215 P.2d 1016

**VANCE et al. v. FORTY–EIGHT STAR MILL et al.**

**No. 5203.**

Supreme Court of New Mexico.

Nov. 29, 1949.

Rehearing Denied April 5, 1950.

Hannett & Hannett and M. A. Threet, Albuquerque, for appellants.

Ernest A. Polansky, Albuquerque, Robert B. Bennett, Albuquerque, for appellees.

COMPTON, Justice.

This is a suit on contract by which appellee, Harry V. Vance, assignee of J. M. Igoe, sought to recover $3,032.81 for merchandise allegedly sold and delivered to appellants. By motion, appellee J. M. Igoe was made a party plaintiff. By counterclaim, Igoe sought to recover $1,000.00, for breach of contract. Appellants answered and counterclaimed. By answer they assert that they refused to pay for the merchandise delivered because appellee Igoe had breached the contract and that they tendered to him all merchandise received by them. By counterclaim they sought to recover $1,000.00 for his breach of contract.

The case was tried to the court without a jury and at the conclusion of the hearing, judgment was rendered in favor of appellee Vance for $3,032.81, and in favor of Igoe on appellants' counterclaim and in favor of appellants on Igoe's counterclaim. Appellants appeal from that part of the judgment awarding appellee Vance $3,032.-81.

The essential findings are:

1. That on the 20th of February, 1946, the defendant's ordered in writing from the plaintiff, J. M. Igoe, goods, wares, and merchandise. That by the terms of the written orders the exact quantity of merchandise was stated and the total value of said merchandise was $6,340.67 as appears from the written orders signed by the defendants, acting through their duly authorized agent, and accepted by the plaintiff Igoe. Said merchandise consisted of oil and lubricants and said order specifically described the number and the kind of containers that such merchandise was to be shipped in to the defendants.

2. That thereafter, on the 16th of March, 1946, the defendant, Forty-eight Star Mill, entered into a Jobber Agreement with the Alemite Company in words and figures as follows:

"Jobber Agreement"

"Memorandum Of Agreement, made and entered into this *16th* day of *March, 1946*, by and between Alemite Company of El Paso

(Distributor)

(hereinafter referred to as the "Seller", and 48th Star Mill

(Street Address)

of the City of *ALBUQUERQUE*, State of *NEW MEXICO* (hereinafter referred to as the "Buyer")

Whereas, the Seller is desirous of selling certain Alemite products to the Buyer, and Whereas, the Buyer is desirous of buying such Alemite Products from the Seller,

Now Therefore, in consideration of the mutual covenants hereinafter set forth, and other good and valuable consideration, the Seller hereby agrees to buy certain Alemite products at the prices and on the terms hereinafter specified:

1. The seller agrees to sell, and the Buyer agrees to buy such products at the established jobbers' discounts, from established list prices.

2. The Buyer agrees to maintain a representative amount of Alemite products on display and in stock at all times.

3. The Buyer further covenants that he will not engage in the sale or distribution (directly or indirectly) of any other high pressure lubricating system consisting of fittings, compressor and hose either for original equipment or for replacement under the guise of repairs or otherwise, which are in violation of the patent rights of (Alemite Division) Stewart-Warner Corporation.

4. Either of the parties hereto shall have the right to cancel this contract upon giving five (5) days' written notice thereof, to the other party hereto. * * *

In Witness Whereof, the parties hereto have caused this agreement to be duly executed in triplicate on the day and year first above written.

Alemite Company of El Paso

(Distributor)

By (signed) · J. M. Igoe      Gen. Mgr.

Its

(Seal)

By      Harris R. Newman, Manager      "'

  *      *      *      *      *      *

3. That in the month of May, 1946, plaintiff Igoe shipped to the defendants a portion of the goods, wares, and merchandise contracted to be delivered to the defendants to the value of $3,032.81.

5. That the merchandise actually received by the defendant was placed in its warehouse and said defendant made no

objection in writing or otherwise to the plaintiff Igoe until request was made by the agent of the plaintiff Igoe that the defendant pay for the merchandise.

6. That plaintiff Igoe, prior to the refusal of the defendant to pay for the merchandise actually delivered, offered to ship a substitute for the oil not delivered, but received no communication from the defendant in reply to this offer.

7. That the defendant bore the relationship of jobber to the plaintiff Igoe.

Appellants tendered findings of fact and conclusions of law, the refusal of which is assigned as error.

It seems that it would be helpful to a proper understanding of the case to discuss the evidence briefly. Appellee Igoe, operated out of El Paso, Texas, as a distributor for Stewart-Warner Products, consisting of lubricants, petroleum and Alemite products. Appellants compose a partnership operating in Albuquerque, New Mexico, under the trade name, Forty-eight Star Mill. Previously, they operated a flour and feed mill but were interested in extending their business. On February 20, 1946, Igoe's agent contacted them with the view of their becoming distributors or brokers of the Stewart-Warner Company in the Albuquerque area. The products and policies of the company were explained and presently an agreement was entered into. Pursuant to this agreement, appellants placed acceptable orders for merchandise, articles and prices being stated separately, amounting to $6,340.67. Prior to shipment of any of the products, a formal jobbers contract was signed by them. Thereafter, Igoe sent the orders to his wholesale house. The wholesaler, at the time, was unable to fill the orders, particularly Pennsylvania oils in quart cans. On April 29, 1946, Igoe advised appellants by letter that Pennsylvania oil in quart cans was not available and offered to supply other oils of equal value, in quart cans. Appellants did not reply to this letter. About May 1st, 1946, Igoe shipped the order, less Pennsylvania oil in quart cans, amounting to $3,032.81. Shortly thereafter, the merchandise was received by appellants and stored in their warehouse in Albuquerque. They made no attempt to sell any of it. Igoe's agent called upon them in an effort to have the products displayed for sale, but all this was without success. Finally, Igoe demanded payment for the amount of the order delivered and appellants, claiming that Igoe had breached the contract in failing to deliver the entire order, refused payment. Appellants then notified Igoe that they were holding the merchandise subject to his order.

The decisive question is whether the contract is severable or entire. Ordinarily, the intention of the parties expressed in the contract in the first instance settles the question. But this is not always the

case. Though the contract is entire and has not been fully performed, the act of the parties subsequent to the making of the contract may be a controlling consideration in determining its nature. Thus, where a buyer accepts and retains goods after he knew that the seller had defaulted in his contract in delivering the whole amount, may render the contract severable.

At 2 Williston on Sales, Sec. 460, the author announces the rule in the following language:

"If the buyer retained the goods, having it in his power to redeliver them after he knew that the seller was going to make default in delivering the whole amount, it seems just that the buyer should pay the contract price. This result seems supported by the decisions which hold the buyer liable under such circumstances. *It is commonly said that the retention operates as a severance of the contract.* * * * If he does so, his action amounts to a new offer to the seller to purchase the partial quantity. * * *"

Also see Rest. Contracts, Sec. 357; Id., Restitution, Sec. 108(b); 46 Am.Jur., Sales, Sec. 220; McDonough v. Evans Marble Co., 6 Cir., 112 F. 634, 50 C.C.A. 403; United States for Use of Hudson River Stone Supply Co. v. Molloy, 2 Cir., 144 F. 321, 75 C.C.A. 283, 11 L.R.A.,N.S., 487; Gibboney v. R. W. Wayne & Co., 141 Ala. 300, 37 So. 436; Richards v. Shaw, 67 Ill. 222; W. H. Purcell Co. v. Sage, 200 Ill. 342, 65 N.E. 723, 725; Holden Steam Mill Co. v. Westervelt, 67 Me. 446; Rodman v. Guilford, 112 Mass. 405; Hedden v. Roberts, 134 Mass. 38, 45 Am.Rep. 276; Clark v. Moore, 3 Mich. 55; Shaw v. Badger, 12 Serg. & R., Pa., 275; Viles v. Barre, etc., Power Co., 79 Vt. 311, 65 A. 104; Roth v. Roach, 115 Okl. 199, 242 P. 201.

Appellants complain of the failure to make numerous findings of fact requested by them. It is enough to say that they are inconsistent with the findings made by the court upon the facts heard by him; consequently, they were properly refused. Its findings, being supported by substantial evidence, will not be disturbed in this court. Lockhart v. Washington Gold & Silver Mining Co., 16 N.M. 223, 117 P. 833; Bezemek v. Balduini, 28 N.M. 124, 207 P. 330.

It is also argued by appellants that the jobbers agreement is not enforcible because it lacks mutuality. The contract seems certain enough in its terms. It gives appellants the exclusive right to sell Alemite products in the Albuquerque area. It also provides that Igoe shall furnish a substantial stock of merchandise at an established jobbers discount. It would appear that obligations and benefits are thereby fixed as to both parties. We see no reason why it could not be enforced.

Finally, appellants rely on tender. We find it difficult to follow appellants in this regard. It is sufficient to say that after receiving the letter of April 19, 1946, they retained the merchandise until sometime in June, making no complaint until payment therefor was demanded, then refused and notified Igoe that they were holding the merchandise subject to his order. It was the retention by them of a portion of the merchandise with knowledge of the sellers failure of performance that rendered the contract severable. Tender, under such circumstances, is not available to them as a defense.

The judgment will be affirmed and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.