## EDDY & DAVIS *v.* CHARLES CLEMENT.

### Contract. Recoupment. Damages.

The plaintiffs agreed to furnish lumber for building the defendant's house as fast as wanted for that purpose, it being understood by all parties at the time of the contract that the plaintiffs were dependent for lumber on the saw mills in the vicinity. *Held*, that this understanding will not excuse the plaintiffs for a failure to furnish according to the contract, though it was impossible for them to get out the lumber as fast as was required on account of the saw mills in the vicinity being stopped by a drought.

*Held,* that under the circumstances of the case it was not the defendant's duty to purchase the lumber elsewhere.

Eddy et al. *v.* Clement.

*Held,* that the damage which the defendant sustained by the default of the plaintiffs, was a proper subject of *recoupment* in an action by the plaintiffs to recover for lumber furnished.

*Held,* that the right of the defendant to damages, or to *recoupe* in this action, was not affected by the fact that the defendant, in connection with the contract with the plaintiffs, contracted with B. to build the house and have it ready for plastering before cold weather, and that owing to the plaintiffs' failure to furnish lumber it was not done until the next winter.

BOOK ACCOUNT. The auditor finds that in the month of April, 1863, the plaintiffs agreed to furnish what timber and lumber might be wanted to build the defendant's house at the prices charged in the plaintiffs' bill. The plaintiffs contracted with the defendant's agent, who was the architect of the defendant in building his house, to commence furnishing the timber in four weeks after making the contract, and from and after that time to furnish and deliver the timber and lumber at the place where the house was to be built, as fast as the builders of the house should want the same. The defendant, in connection with this contract, made a contract with a Mr. Beals to build and erect the defendant's house and to have the same ready for plastering before the cold and freezing weather the fall after. The plaintiffs began to furnish and deliver timber and lumber within the time specified by the contract, but did not so continue to deliver it as fast as it was wanted, or so as to enable the builder of the house to have the same ready for plastering in the fall, and not until winter. The auditor finds that the defendant suffered a loss and damage by the plaintiffs' not fulfilling their contract equal to the amount of the balance of the account; and that, if the defendant's loss is to be deducted from the plaintiffs' claim, there is no balance due the plaintiffs from the defendant. The auditor finds that Eddy & Davis were dependent on the mills in the vicinity, which was understood by all parties at the time of the contract. The reason why the plaintiffs did not deliver the timber and lumber as fast as it was wanted, and according to the contract, was, that the season, after the making of the contract, was extremely dry, and that the saw mills in the vicinity were stopped by the drought, and that it was impossible for the plaintiffs to get out the lumber as fast as it was required, and that it was not occasioned by any negligence or want of exertion on their part. The auditor further finds

that the timber and lumber was fully worth what is charged in the plaintiffs' account at the times it was delivered, and that at the contract price there is a balance of $115. and interest due the plaintiffs on account of the lumber they had delivered, subject to the foregoing facts.

On the said report, the court, at the September Term, 1865, Kellogg, J., presiding, rendered judgment *pro forma* in favor of the defendant,—to which the plaintiffs excepted.

*Prout & Dunton* and *R. S. Peabody*, for the plaintiffs.

I. We insist the plaintiffs were excused from a literal performance, for two reasons: *First*, because such was the *intention* of the parties. The construction of the contract should be in accordance with the real meaning and intention of the parties: 2 Parsons on Con. 7; *Laton* v. *Sneyd*, 4 C. L. 200; *Gray, Adm'r,* v. *Clark*, 11 Vt. 583; *Hinsdale* v. *Partridge*, 14 Vt. 547; *Lowry* v. *Adams*, 22 Vt. 160. *Second*, upon the ground that it became impossible for them to do so, from a cause which cannot be attributed to them; and this impossibility was not among the probable contingencies which a prudent man would have provided against, or could have foreseen. 2 Parsons on Con. 184.

II. The defendant cannot legally recover his damages in the way attempted; he cannot *recoupe* damages accruing in this manner. *Keyes* v. *West. Vt. Slate Co.*, 34 Vt. 81. Another view: The damages sustained by the defendant were not the necessary or immediate result of the failure of the plaintiffs to fulfill their contract in the respect complained of, but grew out of the failure of Beals to get the defendant's house ready for plastering before cold weather. Sedgwick, 58, 59; *Vanderslice* v. *Newton*, 4 Com. 130; 4 Abbott's Dig. 369, § 151; *Packard* v. *Slack*, 32 Vt. 9; *H. Copper Co.* v. *Vt. C. M. Co.*, 33 Vt. 92.

III. The report does not show that the defendant made any effort to procure the timber elsewhere. The damages he sustained therefore accrued from his own neglect as well as from the neglect of the plaintiffs.

*E. Edgerton*, for the defendant.

I. The plaintiffs can only recover as upon a *quantum meruit*, such sum as the contract in the mode and manner of its performance, has

Eddy et al. *v.* Clement.

been of actual benefit to the defendant; such benefit to be estimated in this case by deducting from the whole amount of the contract price for the lumber furnished, such sum as will make just compensation to the defendant for the damages sustained by him in consequence of the breach of the contract by the plaintiffs. *Kelly et al* v. *Bradford,* 33 Vt. 35; *Dyer* v. *Jones,* 8 Vt. 205; *Brackett, Adm'r,* v. *Morse,* 23 Vt. 554; *Morrison* v. *Cummings,* 26 Vt. 486; *Hubbard* v. *Belden,* 27 Vt. 645; *Barker et al.* v. *Troy & R. R. R.,* ib. 780; *Swift* v. *Harriman,* 30 Vt. 607.

II. The "drouth" and consequent suspension of operations in the mills upon which the plaintiffs depended for their supply of the lumber contracted for, furnish no *legal* excuse for their failure to deliver it in the quantities, and at the times stipulated in the contract. *Gilpin* v. *Conzequa,* Pet. C. C., 86; *Huling* v. *Craig,* Addis. 342; *Hannony* v *Bingham,* 2d Kern. 99; *Esposito* v. *Bowden,* 4 Ellis & B. 963; *Beebee* v. *Johnson,* 19 Wend. 500; *Hadley* v. *Clark,* 8 T. R. 259.

III. No necessity for plea in offset. *Mills, May & Co.* v. *Brownell,* 3 Vt. 463.

The opinion of the court was delivered by

STEELE, J.  The auditor finds that, at the contract price, there is a balance of $115. and interest due the plaintiffs on account of the lumber they have delivered the defendant.  He also finds that the plaintiffs' agreement was to furnish and deliver the lumber at the place where the defendant's house was to be built, " as fast as the builders of the house should want the same;" that they failed to deliver it as fast as wanted, and that by reason of the failure the defendant suffered a loss equal to the balance due the plaintiffs at the contract price.  It is urged that, in estimating this loss, the auditor considered damages which arose from a breach of contract between the defendant and the builder of the house.  We do not think the report can fairly be so interpreted.  It states that the defendant, in connection with his contract with the plaintiffs, made a contract with a Mr. Beals to build the house and have it ready for plastering before cold weather, and that owing to the plaintiffs' failure to furnish lumber it was not done until the next winter.  It was necessary to show that the defendant had arranged to have the house built before win-

32

ter, in order to establish the fact that the plaintiffs' failure to de-
liver the lumber as agreed delayed or damaged the defendant.   It
does not appear that the defendant suffered any loss through breach
of a contract with Beals, much less that the auditor reckoned such
loss in his estimate of the defendant's damage by reason of the
plaintiffs' failure in the matter of time.   It is also urged that the
defendant's loss is calculated with relation to his damage in the mat-
ter of his house.   This we think is proper, provided the defendant's
damage can be considered here at all, because the contract was with
reference to the building of the house, and in terms to furnish the
lumber " as fast as the builders of the house should want it."   It
does not appear upon the report that the auditor considered any re-
mote or consequential damage, but the fair intendment is that he
estimated only the direct loss to the defendant which arose from the
plaintiffs' failure to furnish the lumber as agreed.   It is unquestion-
ably true that upon the plaintiffs' default the defendant was bound to
conduct himself reasonably, and, if it would clearly be less detri-
mental to go into the market and purchase the lumber than to delay
till the plaintiffs could furnish it, he was bound to pursue that course ;
but the auditor finds that the plaintiffs' failure arose from there not
being any lumber for sale in the vicinity, the mills having been stop-
ped by the drouth, and under such circumstances, and in absence of
anything to indicate that this claim was made before the auditor, and
in view of the amount of damages which the auditor has found, we
cannot presume that it would have been less detrimental to the par-
ties to have sent into some other section of country and purchased
lumber and paid the cost of transportation.   Nor can we generally
presume that the auditor has determined matters before him upon an
improper basis simply because he might have done so.

The auditor finds that the plaintiffs were dependent for the lumber
they promised to furnish, upon the mills in the vicinity ; and that
this was understood by all parties at the time of the contract, and
that their default arose from the failure of these mills, and from no
negligence or want of exertion on their part ; and it is urged that as
the defendant understood their source of supply when he contracted,
the plaintiffs are excused for the delay which the failure of the source
of supply occasioned.   Such an *understanding* is rather in the nature

of an expectation than of an agreement. The plaintiffs were not limited by it to the product of these mills, and it is difficult to distinguish this in principle from a contract for the future delivery of produce which the parties both expect or understand at the time will be raised or grown and obtained in a particular section of country, but which is not grown in that section on account of a failure of the crop from bad weather. No claim is made here, nor does it appear that any was made before the auditor. but that the defendant accepted this lumber in such a manner as to preserve his claim for damages for its non delivery according to the terms of the contract.

The only remaining question is whether the defendant's damages are a proper subject of *recoupment*, or must be recovered in an independent action, or which is equivalent, under a plea in offset.

The cases *Dyer* v. *Jones*, 8 Vt. 205 ; *Hubbard* v. *Belden*, 27 Vt. 645 ; *Barker* v. *Troy & B. R. R*, 27 Vt. 780, among others in this state apply this principle in reducing the recovery in actions for wages by deducting from the stipulated price, the damage which has accrued to the employer by the partial failure of the other party to fulfil his contract. In the case *Swift* v. *Harriman*, 30 Vt. 608, the same principle is applied to a contract to carry on a saw mill, and in *Brackett* v. *Morse*, 23 Vt 557, to a contract to pasture a given number of cattle ; in the case *Morrison* v. *Cummings*, to a contract to construct a certain number of charcoal kilns. It will be seen, by examination, that it is not the subject matter of the contract that determines the applicability of this mode of recovery, but the nature of the agreement and of the breach of it.

In *Keyes* v. *The Western Vt. Slate Co.*, 34 Vt. 83, which is cited by the plaintiffs, the court decline to lay down any rule upon this subject, and do not find it necessary to decide anything with regard to it, but in the opinion reported in that case, *Allen* v. *Hooker*, 25 Vt., is cited in connection with a remark that the defendant in an action for goods sold may, under the general issue, reduce the damages by showing a breach of warranty of the goods. In *Bragg* v. *Bradford*, 33 Vt. 38, this doctrine is very fully and ably discussed, and it would seem that this case falls fully under the rules there laid down by ALDIS, J.

The plaintiffs have substantially but not strictly performed their

contract—the defendant has been benefitted—the failure was not wilful—the parties cannot rescind.  In addition it may be remarked that in such a sale of goods as this in which the delivery is to be from time to time as wanted, it is difficult to distinguish in principle between a *recoupment* of damages for a failure to meet the contract in quality or in quantity, and a failure to meet the contract in time or readiness to deliver as wanted.

We are all of opinion that this case is clearly within the reason of the rule which permits the *recoupment* of damages, and therefore the judgment of the county court is affirmed.