J. S. VILES *v.* BARRE & MONTPELIER TRACTION & POWER CO.

October Term, 1903.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and HASELTON, JJ.

Opinion filed November 20, 1906.

*Entire Contracts—Partial Performance—Right to Recover on
Quantum Meruit—General Assumpsit—Evidence—Error
Not Cured by Charge.*

Where plaintiff has faithfully tried to perform exactly and completely
   his "entire" contract with defendant, but has been prevented
   from complete performance by causes not occasioned by him and
   which were beyond his control, and defendant has voluntarily
   received the benefit of plaintiff's faithful efforts to perform fully,
   plaintiff may recover *quantum meruit*, which is the value of the
   benefit so conferred on defendant, less his damage caused by
   plaintiff's failure of complete performance.
In such case, unless the party in default has in good faith endeavored
   to accomplish full performance, he deserves nothing.
In such case, plaintiff may recover *quantum meruit*, on a declara-
   tion in general assumpsit in the common counts. A technical
   *quantum meruit* count is not necessary to a recovery *quantum
   meruit*.
*Lawrence v. Davey*, 28 Vt. 264; *Eddy v. Clement*, 38 Vt. 486; *Kettle
   v. Harvey*, 21 Vt. 301; and *Dermott v. Jones*, 2 Wall. 1, distin-
   guished and explained.

In general assumpsit to recover for electrical power furnished in July and August, 1899, it appeared that in June, 1897, by a valid written contract, for a stated consideration, plaintiff agreed with defendant to furnish it, from his plant operated by water power, a specified amount of electrical power daily for five years; that plaintiff performed and defendant paid till July 1, 1899; that in 1899, from August 19 to September 1, during some portions of each day but one, plaintiff failed to furnish the stipulated amount of power, and this resulted in such damage to defendant that it cancelled said contract on September 2, 1899, after which plaintiff furnished no more power. Plaintiff's evidence tended to show that his failure to perform was not wilful, but that it resulted from a severe and unprecedented drought, while he was endeavoring in good faith to perform according to the exact terms of the contract. *Held*, that plaintiff was entitled to recover *quantum meruit*, which is the fair value of the power furnished and not paid for, less defendant's damage caused by plaintiff's failure of complete performance, but in no event more than the contract price.

It appearing that plaintiff had other patrons besides defendant, it was proper to receive his evidence tending to show that, in his endeavors to supply defendant, he gave it a preference over his other patrons, and that an auxiliary steam power could not have been installed in time to relieve the situation.

It was error to exclude defendant's offered evidence, that in consequence of plaintiff's failure to furnish power in accordance with the terms of the contract, it suffered a loss of patronage, and so of earnings, during September, 1899.

Where inadmissible and prejudicial evidence is received against objection and exception, under an offer to so connect it with other evidence as to make it admissible, and that connection is not made, the error is not cured by directing the jury to disregard the evidence.

GENERAL ASSUMPSIT for electrical power furnished. Pleas, the general issue, and declaration in offset. Trial by jury at the March Term, 1902, Washington County, *Start*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. Plaintiff brought two suits to recover for power furnished in July and August, respectively, which suits were tried together.

*Richard A. Hoar* and *Rufus Brown* for the defendant.

Where the contract is to do a thing which is possible in itself, the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by the party, nor was within his control. Chit. Cont. 10th Ed. 663; *Jervis* v. *Tomkinson,* 1 Hurls. & N. 208; *Jones* v. *U. S.,* 96 U. S. 24; 1 Am. & Eng. Enc. 2nd Ed. 588; *School District* v. *Dauchy,* 25 Conn. 530; *Dewey* v. *Union School Dist.,* 43 Mich. 480; *Trenton Public School* v. *Bennett,* 27 N. J. L. 513; *Eddy et al.* v. *Clement,* 38 Vt. 486; *Remy* v. *Olds,* 21, L. R. A. 645; *Dexter* v. *Norton,* 47 N. Y. 62.

Where time is the essence of the contract, there can be no recovery at law in case of failure to perform within the time specified. *Salter* v. *Emerson,* 19 How. 224; *Davenport* v. *Wheeler,* 7 Cow. 231.

Plaintiff's agreement is entire. He must furnish power for each and every day before he is entitled to recover. *Lawrence* v. *Dole,* 11 Vt. 555; *Faulkner* v. *Hebard,* 26 Vt. 542; *Kettle* v. *Harvey,* 21 Vt. 301; *Scofield* v. *Grow,* 63 Vt. 283; *Brandon Mfg. Co.* v. *Morse,* 48 Vt. 322.

*J. P. Lamson* for the plaintiff.

HASELTON, J. In June, 1897, the plaintiff and the defendant entered into a written contract by the terms of which the plaintiff agreed to furnish, every day in the year for a period of five years, electrical power to the defendant sufficient for the operation of its electric railway between Montpelier and Barre, and the defendant agreed to pay for such power at a price named, in monthly installments.

The contract provided that the plaintiff should not be responsible to the defendant for damage resulting to it "from

interruptions to its traffic on its electric railways caused by fire, flood, tempest, riots, or a public enemy."

It appeared that in 1899, from August 19 to September 1, inclusive, the plaintiff during some portions of each day but one, failed to furnish the amount of power which under his contract he was bound to furnish, and it further appeared that during said days the defendant availed itself of power furnished, for the purpose of operating its road when it could, but that in consequence of shortage of power the operation of the road was from time to time necessarily suspended, and the defendant's cars were at a standstill.

September first the defendant sent the plaintiff a written notice stating that on account of the plaintiff's breach of the contract in failing to furnish the power therein provided for, the defendant, after the delivery of the notice, would treat the contract as ended and would neither take, accept nor pay for any more power under the contract. It appeared that this notice was received by the plaintiff in the morning of September second, and that thereafter no power was taken by the defendant from the plaintiff.

All the power taken by the company up to July 1, 1899, had been paid for, and in this case, which is a consolidation of two suits, recovery was sought for the power furnished on and after that date.

The plaintiff had fallen short of compliance with the contract. He could, therefore, recover, if at all, only upon such a showing as would entitle him to recover *quantum meruit*. The plaintiff, subject to objection and exception, introduced evidence tending to show that his failure to fulfil the contract was not wilful, but that it resulted while he was endeavoring in entire good faith to perform according to the exact terms of the contract. His plant was operated by water power, and

some of the evidence objected to tended to show that his failure was the result of an extraordinary and unforeseen drouth. It appeared that he had other patrons besides the defendant, and some of the evidence objected to tended to show that the wants of these patrons were not allowed to hinder him in his endeavors to supply the defendant; in other words, that he gave the defendant a preference over his other patrons. Some of the evidence objected to was to the point that after the shortage occurred or became imminent an auxiliary steam power could not have been established in time to relieve the situation. All this evidence was rightly admitted. Though the plaintiff had broken his contract, he had furnished power which the defendant had taken and used. In the nature of things there could be no rescission.

In the circumstances of the case, if the plaintiff could satisfy the jury that he had endeavored in entire good faith to fulfil the contract to the letter, then he was entitled to a *quantum meruit* recovery unless the amount of damage resulting to the defendant from the breach of contract was such as to prevent such recovery.

The common law rule which sometimes worked hardships undeserved and unsalutary has been somewhat relaxed, but good faith in endeavoring to perform fully and exactly is essential to a *quantum meruit* recovery in a case like this. In such a case, unless the party in default has in good faith endeavored to accomplish full performance he deserves nothing. To hold otherwise would be to encourage a disregard of contract obligations; while so to hold is to enforce the law of contracts as rightly understood, for of this law there is no better definition than that of Sir Frederick Pollock, who says: "The law of contract may be described as the endeavor of the state, a more or less imperfect one, by the nature of the

case, to establish a positive sanction for the expectation of good faith which has grown up in the mutual dealings of men of average right mindedness." Williston's Wald's Pollock on Contracts, I.

The evolution and establishment in this State of the rule which now obtains here in a case such as the plaintiff's evidence tended to make, may be sufficiently traced through the following cases: *Dyer* v. *Jones,* 8 Vt. 205; *Gilman* v. *Hall,* 11 Vt. 510; *Fenton* v. *Clark,* 11 Vt. 557; *Ripley* v. *Chapman,* 13 Vt. 268; *Barker* v. *Troy and Boston R. R. Co.,* 27 Vt. 780; *Brackett* v. *Morse,* 23 Vt. 557; *Hubbard* v. *Belden,* 27 Vt. 645; *Swift* v. *Harriman,* 30 Vt. 608; *Bragg* v. *Bradford,* 33 Vt. 38; *Eddy* v. *Clement,* 38 Vt. 486.

Some of the cases cited above speak of substantial performance as an element of recovery; but as is pointed out in *Drew* v. *Goodhue,* 74 Vt. 437, 52 Atl. 971, the phrase "substantial performance" is used in two senses. That it has a double and so a confusing use is made altogether clear by the opinion in *Manning* v. *School District,* 124 Wis. 84, 102 N. W. 356. In some of the cases it means full performance according to the fair intent of the contract, and permits recovery on the contract without recoupment. But as used in the cases relevant to the question here, it means something distinctly short of full performance, as the facts of the cases show, and includes such performance as was in this case shown to have been rendered down to the time when the defendant elected to treat the contract as at an end.

Counsel for the defendant cite *Lawrence* v. *Davey,* 28 Vt. 264, as a case analogous to this. There the plaintiff contracted to deliver certain quantities of hard wood coal to the defendant, but failed to deliver the quantities he had agreed to. The plaintiff recovered on the ground of a waiver by the

defendant, and in the opinion it is said that probably recovery could not have been had if the defendant had insisted upon strict performance of the contract. But that case states the things which the evidence of the plaintiff therein tended to show, and it did not tend to show that the plaintiff endeavored in good faith to comply with the terms of the contract.

*Eddy* v. *Clement,* 38 Vt. 486, is cited by the defendant as a case favorable to its contention. The plaintiff therein failed to furnish the defendants with the quantity of lumber which he had contracted to furnish them, and it was held that, though he was prevented from fulfilling on account of a severe drouth which stopped the lumber mills on which he was dependent, nevertheless, he broke his contract. But the effect given to the plaintiff's breach of contract was simply to permit the defendant to recoup his damages, and judgment went for the defendant solely because the damages recouped by the defendant equalled the sum to which at the contract price the lumber delivered and unpaid for would come.

*Kettle* v. *Harvey,* 21 Vt. 301, cited on the defendant's brief, is a case in which it was held that there was nothing due on an entire contract which had not been fully performed, but in that case there had been a voluntary and wilful abandonment of the contract. The defendant cites *Jones* v. *United States,* 96 U. S. 24. That was a case of a contract for furnishing an army in the field, and it was held that time was of the essence of the contract and that the government had a right to refuse to accept and pay for material tendered out of time. Had the government taken and used material furnished out of time and then refused to pay for it because it was not furnished in accordance with the contract a different case would have been presented.

*Dermott* v. *Jones,* 2 Wall. 1, a case which arose in the District of Columbia, is analogous to this. That was a case of a failure to perform all the undertakings of an entire contract. The court held that though the failure was in consequence of great and unforeseen difficulties the plaintiff below was not excused from doing what he had undertaken to do; but the Court were of opinion that he was entitled to recover subject to the defendant's right to recoup, a right which had been denied in the trial court. The Court further expresses itself upon several questions not necessary to the decision but likely to arise on a new trial of that case. What is thus said is in harmony with the doctrines which the Court of this State has from time to time applied. The Court say that recovery cannot be had by one who has wilfully left a contract unfinished; that good faith is essential to recovery by one who has not fully performed; that the suit in case of incomplete performance should be not on the special contract but on the common counts in *indebitatus assumpsit,* but that nevertheless the contract should be produced on trial. Finally the Court say: "There is great conflict and confusion in the authorities upon this subject. The propositions we have laid down are reasonable and just and they are entertained by a preponderance of the best considered adjudications." A lengthy note to *Hayward* v. *Leonard,* 19 Am. Dec. 272, recognizes the conflict and confusion of authorities, many of which are reviewed, but in closing the note Mr. Freeman says: "This doctrine seems to be recognized and to be growing in favor,— where under a special contract a party has in good faith bestowed some labor or parted with some articles to the benefit of another who has as a matter of fact enjoyed the benefit of the labor or the articles whether voluntarily or involuntarily and where the incomplete performance has not been the result

of the party's own provoking or of causes which he might with ordinary diligence have provided against, the one receiving the benefit must pay therefor." What is said in the above quotation about liability in case of the involuntary enjoyment of a benefit is a matter to be considered when occasion for its consideration arises; but here the matter of the involuntary enjoyment of a benefit is not involved. The defendant voluntarily took and used the power for which the plaintiff seeks to recover pay.

It may be remarked in passing that with a careful classification of the American cases having to do with contracts not fully performed, and by observing in each case the nature of the action brought, there is seen to be less conflict and confusion than is sometimes said to exist. However, we address ourselves only to the case at bar.

At the close of the evidence the defendant moved to have a verdict directed in its favor because the plaintiff had broken his contract; because the action was general assumpsit; and it being general assumpsit there could be no recovery by the plaintiff without a showing of full performance on his part; because in order to recover the plaintiff should have brought a special action on the contract; and because there was no evidence tending to show that any unforeseen thing came up to interfere with the fulfilment of the contract. The motion was overruled and the defendant excepted. The action of the court in denying the motion was right. The main question raised by the motion has already been considered. So, too, the tendency of the plaintiff's evidence has been sufficiently pointed out. As to the form of the action, general assumpsit in the common counts was appropriate in the circumstances which the plaintiff's evidence tended to show.

In argument in this Court counsel for the defendant treat the case largely as if it were an action on the special contract. They point to the facts that the contract was introduced in evidence by the plaintiff and that the plaintiff introduced evidence tending to show the reasons why the contract was not fully complied with.   But in order to a *quantum meruit* recovery the contract and these reasons were needed in the case. In no state of the evidence could the plaintiff deserve to recover more than the contract price for power furnished, and he was bound to show why he had not fully performed according to the terms of the contract in order that the question of his good faith in endeavoring fully to perform might be determined.

Fully to meet the objection to the form of the action it should be said that a technical *quantum meruit* count is not necessary to a recovery *quantum meruit*.   Such a recovery may be had under the common counts in *indebitatus assumpsit*. 1 Chit. Pl. 337; 2 Saunders, William's Ed. 122 a, n. 2.

The case was tried upon the correct theory that since the plaintiff in any view of the evidence had broken his contract, the defendant was entitled to recoup its damages resulting from the plaintiff's breach.   In connection with its evidence on the question of such damages the defendant made an offer which, in substance, was an offer to show that in consequence of the failure of the plaintiff to furnish power according to the contract during the period from August 11 to September 1 inclusive, it suffered a loss of patronage and so of earnings during the month of September.   Evidence under the offer was excluded, and we think that its exclusion was substantial error.   The damage offered to be shown was such as might naturally result from the cause to which the defendant would attribute it and the defendant was entitled if it could to intro-

duce evidence which came up to its offer. The defendant had a right to the same latitude in showing its damages for the purpose of recoupment that it would have had in an action to recover damages for a breach of the contract, note to *Van Epps* v. *Harrison,* 40 Am. Dec. 314, and this being so, the evidence offered as above stated should have been received.

Certain evidence received subject to objection and exception by the defendant was admitted apparently with the expectation that other evidence, relative to the same matter, but not forthcoming, would be introduced. The exceptions show that the evidence in question was continuously presented to the jury in argument by both the junior and the senior counsel for the plaintiff. In the charge the court undertook to withdraw the evidence from the consideration of the jury. From a comparison of the evidence with the language of the presiding judge, we find that he stated its tendency fully and fairly, and we quote from the charge, as showing the nature of the evidence in question and the action of the court in reference thereto, the following paragraph:

"Evidence has been introduced tending to show that at the time it is claimed that the plaintiff failed to perform his contract, the defendant was under contract with the Consolidated Lighting Co. not to take power from the Viles plant while the plaintiff furnished lights in Montpelier, Middlesex and Barre; that a suit had been begun against the defendant to compel the performance of this contract in this respect; that the defendant was enjoined from taking power from the plaintiff; that this injunction was dissolved on the giving of a bond. This evidence was admitted for the purpose of showing that the defendant could not use the plaintiff's power without incurring expense or liability to the Consolidated Lighting

Co., and that the defendant derived a benefit or advantage from the termination of the contract between the plaintiff and the defendant, that ought to be considered in determining what damages ought to be charged to the plaintiff by reason of the breach of contract; but this evidence has not gone far enough to show wherein the defendant in these respects was benefited by a termination of the plaintiff's contract, nor to furnish a basis for computing such benefit, if any, and for this reason this evidence relating to the defendant's contract with the Consolidated Lighting Co., the said injunction order dissolving it, and the bond, are withdrawn from your consideration and you will not consider this evidence for any purpose, and will decide the case as you would have done if this evidence had not been admitted."

The trial court was clearly right in ruling that this evidence, as it was left, was improperly in the case. This being so, and the evidence being in its nature prejudicial, it is not probable that it was rendered innocuous by the attempt to withdraw it from the consideration of the jury. They must already have considered it in connection with the legitimate evidence before them, and notwithstanding all that the court well and forcibly said, the withdrawal of the improper evidence from the consideration of the jury was probably nominal rather than actual, and so cannot be held to have had a curative effect.

The defendant took exceptions to rulings upon evidence made during the examination of one Andrews, a witness called by the plaintiff, but there is no sufficient reason for considering these. Exceptions were taken to the charge but they were waived in argument.

*Judgment reversed and cause remanded.*