## PACIFIC-WYOMING OIL CO. vs. CARTER OIL CO.
### (No. 1107, May 20th, 1924; 226 Pac. 193.)

MINES AND MINERALS—OIL AND GAS LEASE—CONDITIONS PRECEDENT —PLEADING—EVIDENCE — JUDICIAL NOTICE — CONTRACTS — BONUS PAYMENTS—FORFEITURES—"SUBSTANTIAL PERFORMANCE" DEFINED —WORDS AND PHRASES.

1. In an action for bonus agreed to be paid for procuring execution of oil and gas contracts, by homesteaders to defendant, if latter obtained or had opportunity to obtain valid right to develop lands, defendant's contract right to demand that homesteaders apply for lease and latter's willingness to do so *held* sufficiently pleaded.

2. Where passage and contents of law are ultimate facts on which recovery depends, the ordinary rule as to pleading leading conclusions is inapplicable.

3. The Supreme Court takes judicial notice of acts of Congress.

4. In an action for bonus agreed to be paid for procuring execution of oil and gas contracts by homesteaders to defendant, if latter obtained or had opportunity to obtain valid right to develop lands, petition stating that defendant had an opportunity to secure right under Act Cong. Feb. 25, 1920, (U. S. Comp. St. Ann. Supp. 1923, §§ 4640¼—4640¼ss), instead of pleading that defendant had an opportunity to develop and operate lands for as long as oil and gas were found, as required by contract, *held* sufficient, existence of opportunity depending on such act in either case.

5. Opportunity to obtain an oil and gas lease for 20 years, with preference right to renewals on reasonable terms

and conditions, under Act Cong. Feb. 25, 1920, §§ 17, 20 (U. S. Comp. St. Ann. Supp. 1923, §§ 4640¼hh, 4640¼jj), *held* equivalent of opportunity to obtain lease for as long as oil and gas is found in paying quantities, as required by contract to pay bonus for procuring development contracts with homesteaders.

6. A contract will not be presumed to have imposed an absurd or impossible condition, but will be interpreted as parties must be supposed to have understood the condition at the time.

7. Separate parts of a contract, though clear and unambigious, do not control, when compared with contract as a whole.

8. Conditions precedent, like other provisions, are construed according to parties' true intent.

9. Intention and meaning of terms used, as determined by parties' situation when contract was made, its subject-matter, and purpose of execution, prevail over dry words of stipulation.

10. Forfeitures are not favored.

11. Fair and reasonable performance or fulfillment of a condition precedent to payment of bonus for procuring oil and development contracts with homesteaders, that right to drill on lands be obtained through future act of Congress, *held* sufficient.

12. "Substantial performance" of a condition precedent sometimes means something distinctly short of full performance, in which case recoupment may be had for part not performed, but in other cases means full performance according to fair intent of contract, and permits recovery thereon without recoupment.

13. In absence of special provision in a contract showing contrary intent, the law considers condition fully performed when purpose of contract has been fairly carried out.

14. Remote possibility of change in Act Cong., Feb. 25, 1920, § 17 (U. S. Comp. St. Ann. Supp. 1923, § 4640¼hh), fixing term of oil leases at 20 years, with preferential right to renew for 10-year periods on reasonable terms, fixed by Secretary of Interior, "unless otherwise provided by law at time of expiration of such period," *held* not so essential nor of such pecuniary importance as to forfeit rights to extra bonus agreed to be paid for procuring oil and gas development contracts from homesteaders if defendant had opportunity to obtain lease for as long as oil and gas was found in paying quantities.

Appeal from District Court, Natrona County, Cyrus O. Brown, Judge.

Action by the Pacific-Wyoming Oil Company and another against the Carter Oil Company to recover upon a lease contract. From a judgment of dismissal plaintiffs appeal.

*F. Chatterton, F. A. Williams* and *J. B. Roote* for appellants.

The court erred in sustaining defendant's demurrer and entering judgment in its favor; a demurrer questions the sufficiency of the facts alleged, 565 C. S., their truth cannot be tested by a general demurrer; the exhibits annexed to the petition are a part thereof, and clearly show defendant's liability; provisions of law may be pleaded as ultimate facts. The following authorities apply to the situation under which the contract was made, 6 R. C. L. p. 849 Sec. 239; Sec. 629-note 49-Williston on Contracts; Studebaker Bros. v. Mau, 13 Wyo. 366; Withington v. Gypsy Oil Co., 172 Pac. 634; Ranny v. Olds, 21 L. R. A. 645; Watson v. O'Niell, 35 Pac. 1064; 1 A. S. R. 58; 143 U. S. 596, 609; 5 Wall 699; the controversy relates to mineral rights and lands covered by homestead entries reserved by the government, and which the homestead claimant contracted to secure, said entrymen having a preferential right to a homestead and a lease in case of discovery; the agreements were made in anticipation of legislation, which was thereafter enacted in a form sufficient to carry out the terms of the contract; these facts are all pleaded and the petition undoubtedly stated a good cause of action.

*James A. Veasy, Peter Q. Nyce,* and *Hagens & Murane* for respondent.

The bonus payment contracted for was made contingent upon the enactment of a lease law by Congress, thus securing to respondent an opportunity to secure the right to develop the land for oil and gas, and operate the same as long as oil and gas might be produced therefrom in paying quan-

tities; the Act of Congress subsequently enacted did not provide the opportunity contracted for by respondent, that is, the right to produce oil and gas from the lands for a period as long as oil and gas should be found in paying quantities, hence respondent is not obligated to pay the stipulated bonus, Morrison v. Wilson, 30 Cal. 344; where general words are used in connection with specific words the latter control, Page, Cont., Sec. 2026; the doctrine applies even where there is a conflict between general and specific terms, Scudder v. Pearce (Cal.) 114 Pac. 571; Hoffman v. Co., (Wis.) 115 N. W. 383; English v. Selby, (Ark.) 172 S. W. 817; a grant for a full period of production is a basic and indispensable requisite of oil and gas leases, Chicago & Allegh. Co. v. U. S. Pet. Co., 57 Pa. St. 83; Karns v. Tanner, 66 Pa. St. 297; Allison's Appeal, 77 Pa. St. 721; Brown v. Vandergrift, 80 Pa. St. 142; Gale v. Co., 6 W. Va. 200; Pet. Co. v. Transp. Co., 28 W. Va. 210; Guffy v. Huskill, 34 W. Va. 49; Thomas v. Huskill, 34 W. Va. 385. The leading case is Eaton v. Gas Co., 122 N. Y. 416; the rule has been followed by courts in all of the petroleum producing states, and considered by this court in Phillips v. Hamilton, 95 Pac. 846; Fast v. Whitney, 187 Pac. 192; and adopted by Congress as to tribal Indian lands in Oklahoma (Act of March 3rd, 1921) a condition precedent must be strictly complied with, in order to create liability, Frank v. Stratford-Hancock, 13. Wyo. 37; Phillips v. Hamilton, supra. Congress having failed in the leasing Act to provide the condition precedent stipulated in contract, respondent's liability for the payment of a bonus has not been created; the petition does not allege generally or specifically the occurrence or happening of this contingency and for that reason fails to state a cause of action; 5681 C. S.; the condition precedent is not alleged, Wilson v. Klank, 20 Minn. 318; Bergneyer v. Eisenenger (Minn.) 60 N. W. 1097; Weeks v. O'Brien, 36 N. Y. 85; Fogg v. Co., 35 N. Y. S. 955; Insurance Co. v. Duke, 43 Ind. 418, legal conclusions are not admitted by demurrer, State v. Irvine, 14

Wyo. 318, the terms of the Federal Leasing Bill limits leases to twenty years, the condition under which defendant contracted for bonus payments was for leases for a period as long as oil and gas should be found; plaintiff's petition does not set forth a cause of action.

*F. C. Chatterton, J. B. Roote* and *F. A. Williams* in reply.

Respondent's brief concedes that it obtained an opportunity of some sort to develop oil and gas from the lands; the agreements were entered into to secure to the respondent whatever opportunity Congress might enact within ten years, granting the homestead entrymen preferential right to lease; Congress did provide for renewable term leases; this is the law in Wyoming, 710 Comp. Stats., the custom urged by respondent does not prevail in Wyoming as to school land leases; the authorities cited by respondent are irrelevant; the lease law granted respondent the opportunity sought in its contract with appellants and others and fixing respondent's liability for the payment of bonuses; all preliminary negotiations must be considered, Gill Co. v. Hind, 18 Fed. 673; Freeman v. Bartlett, 4 N. J. L. 33; Pierson v. Hoag, 47 Barb. 243; Jennings v. Whitehead & Co., 138 Mass. 594; the purpose and intention of the parties govern, Chism v. Schipper, 51 N. J. 1; Chesapeake Co. v. Hill, 14 Wall. 94; Hoffman v. Aetna Co. 32 N. Y. 405; the contract should be construed in a manner consistent with the general intent Page on Contracts 2039; U. S. v. Co., 199 U. S. 414; Succession of S. v. Esbri, 200 U. S. 103; the language should be interpreted in the sense the promisor knew or had reason to know the promisee understood it, Porter v. Berthelet, 20 Fed. 240; Chamberlain v. Pamisville, 15 O. S. 225; when a writing refers to another document, that other document is to be construed as a part of the writing, Williston on Contracts 624; Page on Contracts 2044, if the latter of two clauses be inconsistent with the general purpose of the contract, it will be disregarded, Williston on Contracts 624, Union Co. v. Lewiston, 101 Me. 564; if two clauses in a deed be repugnant the first shall

govern, Straus v. Wanamaker, 175 Pa. St. 213, 6 R. C. L.
236, Employers Assoc. v. Morrill, 143 Fed. 750; Dustin v.
Assoc., 159 N. W. 395; L. R. A. 1917 p. 319; as between
two constructions, one fair the other unfair when consider-
ed in the light of the intent of the parties, the first shall
prevail, Calvo v. De Gutierres, 208 U. S. 443; Motor Co.
v. Hurst, 228 Fed. 280; during all of the time covered by
the transactions the lands belonged to the United States,
and one dealing with regard to mineral leases thereon, must
have known that they were dealing for any sort of right
the Government might choose to grant; paragraph four of
the agreement contains no provision that the tenure of the
mineral leases shall be for a period as long as oil and gas
are found in paying quantities; the intent of the parties is
clearly shown by the instrument and all documents and ex-
hibits must be considered together; when this is done it will
be shown that plaintiff's petition alleges a cause of action.

BLUME, Justice.

This is an action by Glenn Jordan and by the Pacific-
Wyoming Oil Company, successor in interest to A. H. Crow
and L. D. McCall, plaintiffs and appellants, against The Car-
ter Oil Company, defendant and respondent, for the re-
covery of $31,200. A demurrer was filed to the petition for
the alleged reason that the petition fails to state facts suf-
ficient to constitute a cause of action. The court sustained
the demurrer, and the plaintiffs refusing to plead further,
judgment was entered dismissing the petition, and the
plaintiffs bring this case here by direct appeal.

The petition, together with the exhibits attached thereto,
shows substantially the following facts: Prior to March
12, 1919, three citizens of the state of Wyoming, Marks,
Marshall and Van Treek, each made a homestead entry of
320 acres of land in Niobrara County, Wyoming, under the
laws of the United States. The oil and gas deposits under
lying the land were at that time reserved to the United
States. Thereafter, but prior to March 12, 1919, one A. H.
Crow entered into a written contract with the homesteader

Marks, whereby Crow acquired the right to develop the land of Marks for oil and gas, should the homesteader, by subsequent legislation of Congress, be vested with that privilege. About the same time Glenn Jordan, one of the appellants herein, obtained similar contracts with the homesteaders Marshall and Van Treek. Thereupon Jordan and Crow assigned an undivided one-third interest in the three contracts above mentioned to one L. D. McCall, and hence Jordan, Crow and McCall were, on March 12, 1919, joint owners of the three contracts above mentioned, which gave them the right to develop the lands described in the said contracts and in controversy here, for oil and gas, should Congress, by subsequent legislation, confer that privilege upon the homesteaders.

On said last mentioned date, viz: March 12, 1919, said McCall, Jordan and Crow, as parties of the first part, entered into a written contract with the defendant, Carter Oil Company, as party of the second part, which said contract is attached to the petition as Exhibit "D", in which said McCall, Crow and Jordan agreed to secure the cancellation of the three contracts above mentioned and in place thereof secure oil and gas contracts executed by the three homesteaders above mentioned direct to the defendant the Carter Oil Company. The latter agreed to determine, immediately after said contracts with said homesteaders were obtained, whether or not there were any valid placer petroleum claims upon said lands prior to the filing of said homesteaders, if not, then, upon the delivery to it of such contracts executed by said homesteaders, to pay to said first parties a cash bonus of $7.50 per acre covering all of said land. The defendant made such examination, which satisfied the defendant that there were no prior petroleum claims covering said lands. Said contracts, with said homesteaders, duly executed, were delivered by said McCall, Crow and Jordan to said defendant on or about March 20, 1919, and defendant thereupon paid said cash bonus of $7.50 per acre as above provided. Copies of said contracts,

so executed, are attached to the petition, marked exhibits E, F, and G.

Said contract of March 12, 1919, set forth in exhibit D, further provides in section 3 thereof:

"If, under said contracts procured from said homesteaders as aforesaid, the second party obtains a valid right to develop and operate said lands, or any part thereof, for oil and gas mining purposes, or if the second party, under appropriate legislation, has an opportunity to obtain such right to develop and operate said lands, or part thereof, for oil and gas mining purposes, then the second party shall pay the first party an additional bonus of $32.50 per acre when it is vested with a valid right to develop said lands for oil and gas mining purposes, or when, by appropriate legislation of Congress, it has an opportunity to secure said right. The intention and meaning of this paragraph being that the first parties are entitled to such additional bonus upon one of two contingencies; (a) when the second party is actually vested with the right to develop and operate said lands for oil and gas mining purposes for a period as long as oil and gas shall be found in paying quantities; (b) or when the second party, under appropriate legislation, has an opportunity to secure such right."

It will be noted from the foregoing that the extra bonus of $32.50 per acre amounting to the total sum of $31,200 for the 960 acres involved in this case and sued for herein, is made payable under certain contingencies or conditions. The appellant claims that the petition in this case does not show the happening of these contingencies or fulfillment of these conditions. The petition has, as stated, the contracts with the homesteaders attached to it as exhibits, and it states that these contracts provide:

"If, at any time within ten years from the 20th day of March, 1919, the Congress of the United States should enact a law whereby said homestead entrymen should be vested

with the right to obtain from the United States or from the
Secretary of the Interior or otherwise, a permit, lease or
other contract or instrument granting said homestead en-
trymen or either of them, the right to develop and operate
said homestead lands, or a part thereof, for oil and gas min-
ing purposes, then and in such case, said defendant should
have the opportunity to secure to itself such rights under
the terms and conditions under said contracts with said de-
fendant set forth.''

And Paragraph 9 of the petition is as follows:

''Plaintiffs allege that under the provisions of the act of
Congress of February 25, 1920, entitled ''An Act to permit
the mining of coal, phosphate, oil, oil shale, gas and sodium
on the public domain'' (C. 85, 41 Stat. 437) each and all of
said homestead entrymen, from and after the 25th day of
February, 1920, were vested with the right to obtain from
the Secretary of the Interior, a permit to develop and op-
erate all of the lands embraced in their said respective
homestead entries, aggregating 960 acres, for oil and gas
mining purposes, in full conformity with the provisions of
paragraph number 4 of each of said contracts with said
homestead entrymen as set forth in exhibits E, F and G
hereto attached, and that by reason of the enactment of
the Congress of the United States of said legislation and un-
der the terms of said contracts secured by said McCall,
Crow and Jordan from said homestead entrymen to said
defendant, said defendant has, ever since said 25th day of
February, 1920, had an opportunity to secure to itself the
right to operate said homestead lands and all of them,
amounting to 960 acres, for oil and gas mining purposes,
*in full conformity with the provisions of said contract set
forth in said exhibit D*, all of which said facts said defend-
ant well knew.''

Counsel for respondent seem to claim—although that is
not altogether clear—that the foregoing pleading, in at-

tempting to set forth the happening of the event upon which the money sought to be recovered was payable, is nothing but a conclusion of law. No contention is directed against that part of the pleading which sets forth the provisions of the contracts with the homesteaders and the enactment of the act of Congress and the rights of the homesteaders thereunder, but seems to be directed against the statements of the opportunity which the respondent had to obtain a proper right under and by virtue of the contracts with said homesteaders and said Act of Congress. It is frequently difficult to determine whether a statement is a conclusion of law or an ultimate fact. The opportunity for respondent to obtain the right for which it contracted depended on the following ultimate facts: (1) the existence of a valid homestead claim and preference right of the homesteaders to an oil and gas lease; (2) the contract of respondent with said homesteaders, giving the respondent the right to demand of the homesteaders to make an application for such lease; these facts, we think appear sufficiently, particularly in connection with the exhibits attached to the petition; (3) the willingness of the homesteaders to make such application; inasmuch as their contracts are set forth, in which they agreed to do so upon demand, this fact has, we think, been sufficiently pleaded; (4) the passage and contents of the law of Congress. We have here a situation, where the existence of law—both the passage thereof and what it contains—is one of the ultimate facts in the case, and the ordinary rule as to pleading conclusions of law, cannot be applied. This court takes judicial notice of the Acts of Congress. 23 C. J. 128. Strictly speaking, therefore, it would have been unnecessary for the petition to make any reference thereto, although we think that it was good form to do so in this case. It is clear, however, that it is not important that the petition states that respondent had the opportunity to secure the right under said law ''in conformity with the provisions of said contract,'' instead of pleading that the respondent had the op-

portunity to ''develop and operate the homesteaders' lands for a period as long as oil and gas should be found.'' Had the latter clause been pleaded instead of the former, as defendant contends should have been done, in order to make the petition invulnerable to demurrer, it would not have had any controlling effect on the pleading, for it still would have to be construed in the light of the Act of Congress, and could be held to be true only in so far as sustained by that Act and no further. In other words, aside from the first three ultimate facts above mentioned, it depends, after all, on the Act of Congress,—which is a matter of law—as to whether the opportunity mentioned in the contract of March 12, 1919 actually existed. Hence we should not want to hold the pleading in this case insufficient simply by reason of the form thereof.

We come then to the controlling question in this case, upon the present hearing, namely, as to whether or not the defendant had the opportunity under the Act of Congress above mentioned to secure the right for which it contracted by the provisions of section 3 of said contract of March 12, 1919 above quoted. It will be noticed that under the first part of these provisions the defendant agrees to pay the extra bonus of $32.50 per acre in case the defendant obtains a right or the opportunity for a right to develop the said lands for oil and gas without specifying the duration of that right. But these provisions are made definite by the clause immediately following and which, for purposes of clarity, we quote again:

''The intention and meaning of this paragraph being that the first parties are entitled to such additional bonus upon one of two contingencies; (a) that the second party is actually vested with the right to develop and operate said lands for oil and gas mining purposes for a period as long as oil and gas shall be found in paying quantities; (b) when the second party, under appropriate legislation, has an opportunity to secure such right.''

No claim is made that the defendant is actually vested with the right to develop and operate said lands for oil and gas. It is only claimed that defendant had the opportunity to do so under the contracts with said homesteaders and the act of Congress. That fact is not disputed, but it is contended that the opportunity under the act of Congress was not co-extensive with that called for by the contract; that is to say, that defendant never had the opportunity to secure a right to develop and operate said lands for oil and gas *for a period as long as oil and gas should be found in paying quantities;* and that the passage of an act of Congress giving such opportunity is a condition precedent which must be strictly fulfilled before defendant can be held liable for the payment of the extra bonus of $32.50 per acre above mentioned.

The Act of Congress referred to is that of February 25, 1920, mentioned above, (41 Stat. at L. 437-451,) providing among other things for the leasing of oil and gas lands. Section 20 provides for preference rights in favor of homesteaders. Section 17 provides that

"leases shall be for a period of twenty years, with the preferential right in the lessee to renew the same for successive periods of ten years upon such reasonable terms and conditions as may be prescribed by the Secretary of the Interior, *unless otherwise provided by law at the time of the expiration of such periods.*"

Counsel for defendant contend, in the first place, that while successive renewals are provided for, the terms of the lease are to be readjusted at the end of twenty years and each successive period of ten years thereafter; that a grant as long as oil and gas should be found presupposes the same burdens and benefits during the producing life of the property, and that hence the provisions of the Act of Congress do not give the opportunity provided for in the contract. We do not see the force of this contention. The contract

in question, aside from mentioning the duration of the leases, does not otherwise provide upon what terms and conditions they shall be obtainable under the Act of Congress. Even though these terms and conditions should be changed at the end of twenty years and each successive period of ten years thereafter, the lessee has a preference right, and has, therefore, the opportunity to continue the original leases, and that opportunity, because of such preference right, becomes fixed from the time of the original leases. We cannot assume that the requirements as to the terms and conditions of renewals will be unreasonable. The act of Congress itself provides that the renewals shall be on reasonable terms, and it is much more likely that they would be upon better terms than the original leases rather than the reverse. Many leases are constantly made for long periods of years with provisions for adjustment of terms and conditions at certain times. Yet no one would contend that such leases would not be taken to extend throughout the longest period provided therein. That is, substantially, the kind of leases provided for by the Act of Congress in question. In other words we feel clear that in the case at bar, an opportunity to obtain an oil and gas lease for twenty years with preference right of renewals, upon reasonable terms and conditions, is in all respects the equivalent of an opportunity to obtain an oil and gas lease to last as long as oil and gas is found upon the land in paying quantities.

The statute, however, further provides that the preference right to renewals exists *"unless otherwise provided by law at the time of the expiration of such periods."* Does the *possibility* that the law may be changed alter the situation and deprive the plaintiffs of their right to the payment of the extra bonus provided for in the contract? Could that have been the intention of the parties? Counsel for defendant argue, as stated, that the opportunity to obtain the right contracted for is a condition precedent which must be strictly performed. A contract will not be presumed to have imposed an absurd or impossible condition

on one of the parties, but will be interpreted as the parties must be supposed to have understood the condition at the time. 6 R. C. L. 904. It must be considered as an entirety. The separated parts thereof, even though clear and free from ambiguity, do not control when compared with the contract taken as a whole. Page, Contracts, Sec. 2038. As is the case with other provisions of a contract, conditions precedent are to be construed in accordance with the true intent of the parties. 13 C. J. 67. The situation of the parties when the contract was made, its subject matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and when these are ascertained, they must prevail over the dry words of the stipulation. Kauffman v. Roeder, 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247. It is apparent that the parties to the contract in this case considered the lands mentioned as valuable oil lands. McCall, Crow and Jordan evidently demanded a bonus of $40.00 per acre for the grant to defendant of the simple opportunity to secure a lease to the land. The defendant evidently considered this opportunity of great value, and agreed to pay a small portion of it, namely $7.50 per acre when it secured the proper contracts with the homesteaders, and the larger portion of $32.50 per acre, when the opportunity should become complete through the passage of an act of Congress. Thus, when the contracts with the homesteaders were delivered to defendant, McCall, Crow and Jordan had a valuable expectancy, the payment of which was contingent only upon one thing—the act of Congress, which the parties then had evidently reasons to believe would pass. Whatever was to be done by the former had been done; so far as they could perform the contract, it had been performed. It is clear, however, from the contracts before us, that the payment of $7.50 per acre was not considered as full payment to them, should the opportunity above mentioned become complete; that it was in fact but a small part thereof, and hence, if the contract is construed as entitling

them, or their successors in interest, to nothing more, even though the substantial part of the opportunity contracted for existed, the situation is clearly similar to one involving a forfeiture of their right, and such forfeitures are not favored by the courts. All the parties no doubt had hopes that as favorable a law as possible would be enacted. But oil leases of only five years' duration are frequently considered of immense value in this state, and it is not unreasable to assume that the parties made the contract herein with knowledge of that fact. Is it reasonable then to say, that the parties intended that just because the hoped-for leases might fall short of the literal right mentioned in the contract, the additional bonus should not be paid? The right to drill for oil and gas on the lands mentioned was expected to be obtained, as heretofore stated, through a future act of Congress. The right which was expected to be thus granted was unknown and indefinite, particularly as to homestead-lands, as is clearly shown by alternate provisions embodied in the contracts with the homesteaders. A right expected to be obtained from individuals may be one thing; a right expected through an Act of Congress, not yet in existence and purely speculative, another. When the contract in question was entered into, no person could possibly know the exact terms of the expected law, and it would seem that Jordan, McCall and Crow must either be charged with the absurdity of knowingly undertaking to guaranty the exact law that would be passed or we must suppose that they considerd the payment of the bonus of $32.50 per acre as a bare possibility, and hardly that. But nothing of that sort is apparent from the contract, and it would seem that if such was the intention of the parties, language more apt would have been used. See Williston, Contracts, Sec. 675. In view of the facts, then perfectly well known to all the parties, it is much more reasonable to think that they expected that the defendant should, through the act of Congress, have an opportunity to receive a right, perhaps substantially, but not literally that provided for

in the contract; in other words, a fair and reasonable performance or fulfillment of the condition precedent in this case is all that can be said to have been intended. It is true that it is often said that a condition precedent must be exactly performed or fulfilled before a promise, dependent thereon, can be enforced. 13 C. J. 630. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 10 Am. St. Rep. 963. That has been held, for instance, as to conditions upon which depends the payment to be made a guarantor. Ederton v. Taylor (S. C.) 115 S. E. 156. It has also been held that a condition in an oil lease must be strictly performed in order to vest an estate in the lessee. Paraffine Oil Co. v. Cruce, 63 Okl. 95, 162 Pac. 716, 14 A. L. R. 952. On the other hand in insurance policies conditions or other provisions employed for the purpose of creating exceptions to, or limitations upon, the liability of the company, are strictly construed against the insurance company. 32 C. J. 1157. So too, if possible, as already indicated, conditions are construed, so as not to operate as a forfeiture of the rights of parties. Page, Contracts, Sec. 2589; Gazley v. Williams, 210 U. S. 41, 28 Sup. Ct. 687, 52 L. ed. 950. In R. C. L. 944, Sec. 325, the rule is thus expressed:

"In regard to conditions precedent, it is an elementary rule of law that there must be at least a substantial performance thereof, in order to authorize a recovery as for performance of the contract."

In Elliott on Contracts, Sec. 1878, it is said:

"Under the old common law rule, a strict performance is usually required as a condition precedent for recovery, but the modern rule is more liberal and it may now be stated as a general rule that a substantial performance in all respects in good faith is sufficient to satisfy the law."

The phrase "Substantial performance" is sometimes used in two senses. In some cases it means something distinctly short of full of performance, in which case at least recoupment may be had for the part which is not performed. Drew v. Godhue 74 Vt. 437, 52 Atl. 971; Viles v. Traction & Power Co., 79 Vt. 311, 316, 65 Atl. 104. Judging from the cases cited by Elliott, on Contracts, supra, the author, perhaps, had this meaning in mind in writing the foregoing statement, although in Madden v. Oestrich, 46 Minn. 538, 49 N. W. 301, one of the cases cited, it is said that the rule of substantial performance "is applicable to contracts generally." In any event, it is clear from what we have heretofore said, that a condition precedent does not always, at least, have to be literally performed. In other cases, the term "substantial performance" means full performance according to the fair intent of the contract and permits recovery on the contract without recoupment. 13 C. J. 691; Viles v. Traction & Power Co., supra; Drew v. Godhue, supra; Bailey v. Wayman, 201 Pa. St. 249, 50 Atl. 767. "Nowhere," says Prof. Williston in his work on Contracts, Sec. 805, "would a departure from full performance of a condition be regarded as important, if the departure were an inconsiderable trifle having no pecuniary importance."

In Worsley v. Wood, 6 T. R. 710, 101 Eng. Rep. 785, Lawrence, J., said:

"In some cases in the books respecting conditions precedent, where the thing agreed to be done was in effect performed, though not in the exact manner, nor with all the circumstances mentioned, it was deemed a substantial performance, as where the condition was to enfeoff, a conveyance by lease and release has been deemed a compliance. So if the condition be to deliver the will of the testator, and he delivers letters testamentary."

In Oakley v. Morton, 11 N. Y. 25, 62 Am. Dec. 49, the court in one breath states that a condition must be performed strictly, and in the other that a substantial com-

pliance meets the requirements of the law.   In Vandermuler
v. Vandermuler, 108 N. Y. 195, 15 N. E. 383, a condition
for the sale of the premises was held fulfilled when the prop-
erty was condemned for railroad purposes.   In Missouri
Pac. Ry. Co. v. Tygard, 84 Mo. 263, 54 Am. Rep. 97, it was
said:

"There must be a fair and substantial compliance with
the conditions of the contract, and this is all that is re-
quired."

In Hovey v. Pitcher, 13 Mo. 192, the court said:

"In the construction of agreements, courts must look to
the objects which the parties had in view, and a substantial
compliance with the obligations assumed is all that is re-
quired."

See also Line v. Mason, 67 Mo. App. 279; Meincks v.
Falk, 61 Wis. 623, 21 N. W. 785, 50 Am. Rep. 157.   These
cases illustrate the proposition that in the absence of a spe-
cific provision in the contract showing a contrary intention,
the law considers a condition fully performed when the pur-
pose evinced by the contract can be said to have been fairly
carried out.

In the case at bar the condition upon which the payment
demanded in the petition depends, has been fairly, nay
even literally and strictly, fulfilled, unless the possibility
that the law might be changed and deprive the lessee of the
preference right of renewal, after a period of twenty years,
changes the situation in a substantial manner.   We think
that it does not.   Counsel for defendant have eloquently
pointed out how the practical conduct of parties in connec-
tion with oil leases has changed from the early days when
oil and gas were first found in Pennsylvania, and that such
leases have more and more been made for a period as long
as oil and gas should be found on the premises in paying
quantities, for the reason that such leases have been found

to be mutually advantageous to the parties. Counsel have further pointed out how legislation both by state legislatures and by Congress has also changed along the same lines and for the same reason, and they have accordingly convinced us that the possibility that Congress might take a contrary course in the future and deprive original lessees, under the Act heretofore mentioned, of the preference right to continue the leases, is exceedingly remote, and not of sufficient pecuniary importance to be considered as a material factor in determining whether the condition precedent herein has or has not been fulfilled. Even such preference right of renewal might not be of any value, since the oil and gas in the lands covered by such leases might be exhausted at the end of twenty years. And we are safe in saying, we think, that at least the most valuable and profitable deposits of oil and gas in any tract of land are, in any event, gone after a continued removal during such period of time. It is difficult, therefore, to believe, that a remote possibility of a change in the act of Congress as above mentioned, was either intended by the parties, or should be construed, to be an essential factor and of sufficient pecuniary importance so as to forfeit the rights of the plaintiffs to the extra bonus under the contract in suit. We think, from the facts as they now appear, that the condition precedent herein has been fulfilled according to the fair intent of the contract, and we are constrained to hold that the petition in this case states a cause of action.

The judgment of the lower court should, accordingly, be reversed and the case remanded with directions to the trial court to overrule the demurrer to the petition, and for further proceedings in accordance with law. It is so ordered.

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See (1) 27 Cyc p. 624 (1926 Anno); (2) 31 Cyc p. 52; (3) 23 C. J. p. 128; (4) 27 Cyc p. 624 (1926 Anno); (5) 27 Cyc p. 624 (1926 Anno); (6) 13 C. J. pp. 540, 541; (7) 13 C. J. p. 527 (8) 13 C. J. p. 565; (9) 13 C. J. pp. 523, 543; (10) 13 C. J. p. 541; (11) 13 C. J. p. 630; (12) 13 C. J. p. 691; (13) 13 C. J. p. 691.